(38 Misc. Rep. 233.)

PEOPLE ex rel. FRANK v. KEEPER OF THE STATE REFORMATORY FOR WOMEN AT BEDFORD et al.

(Supreme Court, Special Term, Kings County.   June, 1902.)

1. DISORDERLY CONDUCT—BREACH OF PEACE.

The old charter of New York (Consolidation Act, c. 410; Laws 1882, § 1448) provides that one driving faster than five miles an hour in a city street shall be deemed guilty of disorderly conduct. Section 1458 provides that any one shall be deemed guilty of disorderly conduct tending to a breach of the peace who shall commit any of several enumerated acts, and sections 1459, 1461, provide that on a complaint for disorderly conduct, if the magistrate deem it tends to a breach of the peace, security for good behavior may be required. New York City Charter, § 1610, provides that all general provisions of the consolidation act are retained. Neither the Penal Code nor the city charter defines any such offense as "disorderly conduct." Pen. Code, § 675, declaratory of the common law, declares that any act disturbing the public peace is a misdemeanor. Held, that while section 1610 may keep alive the provisions of the consolidation act, the provisions thereof as to "disorderly conduct" do not create any such offense as disorderly conduct, but refer merely to the common-law offense of breach of the peace, and a warrant of commitment, stating defendant convicted of disorderly conduct, stated no offense.

2. SAME—WARRANT OF COMMITMENT—DESIGNATION OF OFFENSE—SOLICITATION BY PROSTITUTES.

Consolidation Act, § 1458, provides that any common prostitute or nightwalker loitering in any public place for the purpose of prostitution or solicitation shall be guilty of disorderly conduct tending to a breach of the peace. Held, that a warrant of commitment stating that defendant was guilty of disorderly conduct, in that on a day named she solicited men on a certain street, charged an offense, though the mere words "disorderly conduct" state no offense.

3. SAME—MAGISTRATE—JURISDICTION.

Consolidation Act, § 410 (Laws 1882, § 1458), provides that any common prostitute or nightwalker loitering in any public place for the purpose of prostitution or solicitation shall be guilty of disorderly conduct tending to a breach of the peace, and the statute states that one guilty may be required to give security to keep the peace, but no punishment is provided. Pen. Code, § 6, provides that all crimes not defined as felonies are misdemeanors. Laws 1895, c. 601, § 14, providing for the city magistrates, gave the court of special sessions exclusive jurisdiction of misdemeanors. Laws 1899, c. 632, permits a woman convicted by any magistrate of misdemeanor to be sentenced to the state reformatory for women. The charter (section .707) provides that when one is convicted of disorderly conduct he may be imprisoned, etc., and Code Cr. Proc. § 899, provides for the summary disposition of disorderly persons. Held, that a city magistrate has no jurisdiction to commit a woman to the reformatory on a plea of not guilty in proceedings for a violation of section 1458.

Habeas corpus and certiorari by the people, on the relation of Rosie Frank, to the keeper of the state reformatory for women, to secure relator's release from custody.  Relator discharged.

Amos H. Evans, for relator.
Henry G. Gray, opposed.

GAYNOR, J.  By the return to the writ of habeas corpus it appears that the relator is detained in the state reformatory for

women at Bedford, N. Y., under a warrant of commitment of a city·magistrate· for three years upon her conviction by him of "disorderly conduct, in that she did on the 27th day of December, 1901, solicit men for the purposes of prostitution" on a public street in the city of New York which is named.

By the return to the writ of certiorari it is stated that she was convicted of the said offense by the magistrate on evidence of a police officer who arrested her and complained against her, but no evidence is returned in obedience to the command of the writ, from which I infer that there was and is none. The conviction appears to have been without any evidence, a thing which appears to occur very' often in this city, as incredible as it may seem.

Counsel for the relator contends that there is in law no such criminal offense as "disorderly conduct." There is no such offense mentioned in the Penal Code, where one might well expect to find all criminal offenses defined. Nor is any such offense defined in the city charter. But· in the charter of the old city of New York (Consolidation Act, c. 410, Laws 1882) there are four sections mentioning such an offense (sections 1448, 1458, 1459, 1461); and they may be kept alive by section 1610 of the present charter, although · there may be some doubt about it. Mr. Ash omits them from the appendix to his annotated charter, though he there gives sections of the consolidation act continued in force by the new charter.

The said section 1448 provides that any one who drives a horse through any street of the city faster than five miles an hour is guilty of "disorderly conduct" and may be fined ten dollars. This would be more naturally and properly called the offense of fast driving. This is the only section which names an offense "disorderly' conduct" alone and without any addition.

Section 1458 is as follows:

"Every person in said city and county shall be deemed guilty of disorderly conduct that tends to a breach of the peace, who shall in any thoroughfare or public place in said city and county commit any of the following offenses, that is to say:

1. Every person who shall suffer to be at large any unmuzzled, ferocious, or vicious dog.

2. Every common prostitute or nightwalker loitering or being in any thoroughfare or public place for the purpose of prostitution or solicitation, to the annoyance of the inhabitants or passers-by.

3. Every person who shall use any threatening, abusive, or insulting behaviour with intent to provoke a breach of the peace or whereby a breach of the peace may be occasioned."

This section it will be seen does not name the offenses therein mentioned "disorderly conduct" merely, but rather "disorderly conduct that tends to a breach of the peace"; and the offense can only be committed in a public street or place.

Sections 1459 and 1461 mention "disorderly conduct," the latter being as follows:

"In all complaints before any magistrate in the city of New York, for disorderly conduct, it shall be lawful for such magistrate, if in his opinion such disorderly conduct tends to a breach of the peace, to require the party against whom such conduct may be proved, either by his or her own con-

fession, or by competent testimony, to give sufficient surety or sureties, for his or her good behaviour, for any term not exceeding twelve months, and the magistrate who may have required such surety or sureties may, in his discretion, at any time discharge the same."

This section, like and in connection with the said section 1459, does not name any offense "disorderly conduct," or profess to define any offense, or to create any new offense, but only refers to "disorderly conduct" which "tends to a breach of the peace," and allows any one committing such conduct to be required to give security for good behaviour, or to keep the peace. It does not allow him to be convicted of any criminal offense and sentenced to fine or imprisonment therefor. Instead of creating any new offense it seems to me very plainly to only refer to the well known common law offense of "breach of the peace," in addition to the offenses mentioned in the said preceding section 1458; the said common law offense having existed from the earliest times. "Any act which in itself constitutes a breach of the public peace, or which has a tendency to cause a breach of the public peace, is a misdemeanor at common law." Clark & M. Crimes, p. 983. And our Penal Code, in addition to specifically defining several crimes against the public peace, has a general provision that "any person who willfully and wrongfully commits any act * * * which seriously disturbs or endangers the public peace or health," is guilty of a misdemeanor. Section 675. The same section provides that "any person who shall by any offensive or disorderly act or language, annoy or interfere with any person or persons in any place," is guilty of a misdemeanor.

All "conduct" which causes or tends to cause a breach of the peace was at common law and is now by express provision of our Penal Code, as we have seen, a misdemeanor. These special provisions applicable to the city of New York are confusing, in that they vary the phraseology of the common law by referring to "disorderly conduct" which causes or tends to cause a breach of the peace. This is purely tautological, for conduct which disturbs or tends to disturb the peace is disorderly, and the comprehensive phrase of the common law, viz., all conduct, certainly embraces disorderly conduct and might well have been left alone. The said provisions are obviously the work of some " 'prentice hand."

The mere phrase "disorderly conduct" standing alone does not state any fixed or definite criminal act, which is absolutely required in the definition of a criminal offense, in order that people may know it is a criminal offense and avoid the commission of it. It may be construed to mean anything a policeman or magistrate chooses. As I have said before in Re Newkirk (Sup.) 75 N. Y. Supp. 777, viz.:

"It is a loose charge which standing alone, i. e., without a statement of the acts alleged to constitute it, may mean anything a policeman or magistrate may wish, and has been very generally resorted to in the city of New York (where most abuses against individual rights originate), against persons who are guilty of no criminal offense, but whom some policeman or other person wishes to annoy and oppress by arrest and imprisonment. It is unfortunate that such a loose phrase has any statutory sanction. It

is dangerous, in that it affords room for false arrests and oppression, especially of those whose rights and liberties ought to be jealously guarded, namely the weak, uninfluential and friendless, whose protection should be the chief aim of government."

Our government is a government of laws, and not of men. That is the distinction between a free government and a despotism. There are no criminal offenses with us except such as are defined by law, and the legislature cannot delegate to the judiciary the creation of criminal offenses. To the end that our government should be one of laws and not of men, it is divided into the three branches, legislative, executive and judicial, as is expressed in that clause of the Massachusetts bill of rights which Rufus Choate said could not be read without a "thrill of sublimity," and which every judge and magistrate may well always bear in mind:

"In the government of this commonwealth, the legislative department shall never exercise the executive and judicial powers, or either of them: the executive shall never exercise the legislative and judicial powers, or either of them: the judicial shall never exercise the legislative and executive powers, or either of them: to the end that it may be a government of laws and not of men."

Concluding, therefore, as I do, that there is no criminal offense of the mere loose name of "disorderly conduct," it remains to be seen whether the warrant of commitment by the additional words it uses states an offense, and if so whether the magistrate had the jurisdiction to try the defendant for it.

The words of such warrant which describe the offense are, as we have seen, "disorderly conduct in that she did on the 27th day of December, 1901, solicit men for the purposes of prostitution" on a public street named. There is here, I think, a statement of the offense of conduct tending to a breach of the peace within subdivision 2 of the said section 1458 of the charter of the old city, which provides that "every common prostitute or nightwalker loitering or being in any thoroughfare or public place for the purpose of prostitution or solicitation to the annoyance of the inhabitants or passers by," is guilty of such offense. Though the words "disorderly conduct" of themselves state no criminal offense, the words which follow do state such an offense.

The magistrate, however, had no jurisdiction to try and convict the relator on her plea of not guilty for the offense charged, and sentence her to prison. It will be observed that the said section 1458 prescribes no fine or imprisonment for the offense therein created; nor is any such punishment prescribed anywhere else in the said act. As we have seen, section 1461 only empowers a magistrate to put a person guilty of conduct tending to a breach of the peace under bonds for good behaviour, and no such thing was done here. The learned assistant district attorney claims that not being felonies the said offenses created by the said section 1458 are therefore misdemeanors under the general provision in the Penal Code (section 6) that all crimes which are not defined to be felonies are misdemeanors, and subject to the general punishment prescribed for misdemeanors (Pen.

Code, § 15). But conceding this to be so, our city magistrates have no jurisdiction to try charges of misdemeanors. The act which provided for the present city magistrates (section 14, chapter 601, Laws 1895) gave to the court of special sessions "exclusive jurisdiction to hear and determine all charges of misdemeanors" committed in the city of New York, unless before trial the accused should be indicted, or it should be ordered in the way there prescribed that the charge be prosecuted by indictment; and this provision was transferred to section 1409 of the charter of the present city. Kolzem v. Railroad Co. (Com. Pl.) 20 N. Y. Supp. 700; People v. Patterson (May 16, 1902) 77 N. Y. Supp. 155. I have requested the learned assistant district attorney to refer me to any section of the city charter or other statute giving city magistrates jurisdiction to try a charge of the misdemeanor of which this relator was convicted, but he has been unable to find any.

The relator being a woman between the ages of 15 and 30 years came under the extraordinary provisions of chapter 632 of the Laws of 1899, which permit women of that age to be sentenced to imprisonment in the institution therein named on being "convicted by any magistrate of petit larceny, habitual drunkenness, of being a common prostitute, of frequenting disorderly houses or houses of prostitution, or of a misdemeanor." But this statute was not intended to and did not create offenses or confer jurisdiction on magistrates in respect to the trial of misdemeanors. The words "convicted by any magistrate" mean only by any magistrate having power to try and convict for the misdemeanors named, and in the city of New York magistrates have no such power. It may be noted also that this statute does not mention "disorderly conduct."

While no offense called "disorderly conduct" is defined or created by the present charter, the phrase is used in section 707 as follows:

"Whenever any person is convicted in the city of New York as constituted by this act, of public intoxication, disorderly conduct or vagrancy, the court or magistrate before which or whom such conviction is had shall, if it or he do not suspend sentence as hereinafter provided, impose upon the person so convicted one or the other of the penalties herein provided."

And then follows a complicated optional and alternative system of fines, imprisonment and security for good behaviour. There is nothing here conferring upon magistrates jurisdiction to try charges for misdemeanors upon a plea of not guilty. What is meant by the phrase "disorderly conduct" as here used is not plain. The section was not intended to create any crime, nor to define any crime, nor does it define any. It is also obviously the work of the "'prentice hand."

Section 899 of the Code of Criminal Procedure defines with care and precision in nine subdivisions who are "disorderly persons"; and the sections immediately following provide for a summary disposition of them by magistrates. It seems that the phrase "disorderly conduct" has been sometimes used when the well defined phrase "disorderly person" was meant. The persons classed as "disorderly

persons" by the said Code (section 899), and for a summary disposition of whom provision is made, are not classed as felons or misdemeanants at all. They are not tried for any crime, and our city magistrates therefore have jurisdiction of their cases. The same is true of the persons classed as vagrants by section 887 of the same Code.

It seems to me that our Penal Code and Code of Criminal Procedure contain ample definitions of crime, and procedure for the prosecution of criminals, and for the prevention of crime, and for the holding of persons under bonds for good behaviour, to answer every requirement or exigency of a large city; but if that be not so, then there is a great necessity for revising the special statutory provisions concerning crimes and the punishment and prevention of crime in this city, and putting them in the charter in accessible form and connection. The learned counsel in this case and myself have had very great difficulty in finding the special statutes applicable or claimed to be applicable to this case, or under which the magistrate possibly assumed to act, and I am under great obligation to them for the work they have done.

I have read with much care the opinion in Re Twelve Commitments, 19 Abb. Prac. 394, in which a learned judge had to deal with some of the difficulties encountered in the present case, and find nothing there contrary to what I have said here. If it were really said there as is claimed that under the phrase "disorderly conduct" magistrates may decide anything they wish to be "disorderly conduct," I could not agree with it. There can be no such absolute power under our system of government. Some act or conduct amounting to or tending to a breach of the peace is the offense contemplated by the said sections 1458, 1459 and 1461 of the old city charter, and that is the test of jurisdiction. If magistrates were under no definition or limitation, but free to call anything they choose "disorderly conduct," and hold persons therefor, no one's liberty would be safe.

Let the relator be discharged.