(39 Misc. Rep. 700.)

#### PEOPLE ex rel. FORSTER v. WARDEN OF KINGS COUNTY PENITENTIARY et al.

(Supreme Court, Special Term, Kings County.    February, 1903.)

1. CRIMINAL LAW—JURISDICTION—CITY MAGISTRATE.
   A city magistrate has no jurisdiction of the offense of loitering for purposes of prostitution in any public place in the city of New York, under Laws 1882, p. 366, c. 410; § 1458, it being a misdemeanor triable only by a court of special sessions.

2. SAME—COMMITMENT.
   A commitment of a woman, charged with loitering for purposes of prostitution, by a city magistrate, to imprisonment in the county penitentiary, after he has found her "guilty of such disorderly conduct as, in my opinion, tends to a breach of the peace," is void.

Application by the people, on the relation of Fannie Forster, for writ of habeas corpus and certiorari to the warden of the Kings county penitentiary and others.    Relator discharged.

Luke O'Reilly, for relator.
Martin W. Littleton, for respondents.

GAYNOR, J.    The relator was tried and convicted by a city magistrate in the borough of Brooklyn, and sentenced to a term of imprisonment of six months in the Kings county penitentiary. She seeks to be released by writs of habeas corpus and certiorari.

The complaint against her was that she was "a common prostitute and night walker, and that she was on the night of the 20th of January, 1903, in the borough of Brooklyn, city of New York, and county of Kings, loitering in Hudson avenue near De Kalb avenue, that being a public thoroughfare and public place, soliciting and importuning men passing in and along said thoroughfare or place, for the purpose of prostitution, to the great annoyance of the people of the state," etc.

She was found "guilty of such disorderly conduct as in my opinion tends to a breach of the peace," as the commitment recites, instead

of being in terms convicted of the offense charged. That the terms of the commitment are not broad enough to embrace the offense charged will appear from the examination of statutes which follows, though the decision will be placed on a broader ground.

If the information against the relator charged her with a misdemeanor, then the magistrate had no jurisdiction to try her, and her conviction would for that reason be void. Exclusive jurisdiction to try all charges of misdemeanors in the city of New York belongs to the courts of special sessions and not to magistrates. Laws 1901, p. 602, c. 466, § 1409; People ex rel. Frank v. Keeper, 38 Misc. Rep. 233, 77 N. Y. Supp. 145; People ex rel. Clark v. State Reformatory, 38 Misc. Rep. 241, 77 N. Y. Supp. 151; People ex rel. Smith v. State Reformatory, 38 Misc. Rep. 243, 77 N. Y. Supp. 153; People. v. Patterson, 38 Misc. Rep. 79, 77 N. Y. Supp. 155; Kolzem v. Broadway & Seventh Ave. R. R. Co., 1 Misc. Rep. 148, 20 N. Y. Supp. 700.

The learned counsel for the magistrate claims that the information was drawn under subdivision 2 of section 1458 of the charter of the old city of New York (Laws 1882, p. 366, c. 410); and that is obviously so, for it follows the phraseology thereof. The said section and others of kin to it are presumed to be kept in life by section 1610 of the present city charter (Laws 1901, p. 652, c. 466).

By the said subdivision, and the first part of the section, "every common prostitute or night walker loitering or being in any thoroughfare or public place for the purpose of prostitution or solicitation, to the annoyance of the inhabitants or passers-by," "shall be deemed guilty of disorderly conduct that tends to a breach of the peace." By the first subdivision any one who suffers an unmuzzled ferocious or vicious dog to go at large, and by the third any one who uses threatening, abusive or insulting behavior with intent to provoke a breach of the peace, shall be deemed guilty of the same offense, viz., of "disorderly conduct that tends to a breach of the peace."

It is to be observed that the offense defined in subdivision 2 is not of being a common prostitute; it is of loitering or being in a public street or place for the purpose of prostitution or solicitation, which is called disorderly conduct that tends to a breach of the peace; and this was the only charge that was or could be made against the relator under the said subdivision. She could not be charged or convicted under it merely of being a common prostitute; the offense there defined is not that, but an offense against decency which could be committed only in the public street.

This section 1458 does not prescribe any penalty for the offenses it creates. They are therefore left subject to the general penalty prescribed for misdemeanors for which no special penalty is prescribed, if they be misdemeanors.

And I see no ground for holding them not to be misdemeanors, but only of that class of statutory offenses which are less than criminal offenses—not classed as crimes at all—and which are therefore not required to be dealt with according to the course of the common law, but may be dealt with summarily. The offenses of that class are defined, and the way of dealing with them prescribed, in the ancient stat-

utes which are preserved in sections 887 and 899 of the Code of Criminal Procedure. Persons convicted thereunder are not convicted of any crime, and may therefore in addition be tried and convicted of the acts for which they are summarily dealt with when such acts constitute crimes. People ex rel. Van Houton v. Sadler, 97 N. Y. 146. The antiquity of these two statutes is probably all that saves them from the taint of unconstitutionality, as is familiar to those who have looked into the literature of that subject. At all events, certain it is that no such summary jurisdiction can exist unless specifically conferred by statute. It cannot be presumed; on the contrary, when an offense is created, the presumption is that it is one to be dealt with according to the regular and safe course of the common law.

The next section in the said old charter (section 1459) only provides that whenever it shall appear on oath to a magistrate that any person has been guilty of "any such disorderly conduct as in the opinion of such magistrate tends to a breach of the peace, the said magistrate may cause the person so complained of to be brought before him to answer the said charge."

These two sections were taken into the compilation of laws which constituted the said charter from an independent statute which formed no part of the charter of the city of New York, viz., from chapter 508, p. 1013, of the Laws of 1860. They appear there together (sections 20, 21), and contain all there is in the said act on the subjects which they embrace. The latter section does not embrace or refer to the offenses defined in the former. It embraces any such disorderly conduct as "in the opinion of such magistrate" tends to a breach of the peace; whereas the former section embraces only three offenses, which it specifically defines and declares to tend to breaches of the peace, and does not leave to depend on the opinion of the magistrate as to whether they tend to a breach of the peace. The latter section contemplates any comduct which tends to a breach of the peace, which by common law, and later by statute, has always been a misdemeanor. It says such "disorderly" conduct as tends to a breach of the peace; but that word is tautological, for any conduct tending to a breach of the peace is disorderly.

Neither of these two sections prescribes any procedure or punishment for the offenses it embraces, nor does any other part of the said act of 1860. It seems therefore incontestable that the three offenses in the former section, and which were created by the said act of 1860, were and are misdemeanors. They were simply taken into the said charter compilation just as they were.

There is another section of the said old charter which mentions "disorderly conduct" which, "in the opinion" of the magistrate, tends to a breach of the peace, viz., 1461. It provides that in all complaints therefor before a magistrate, he may require the offender to give sureties for his good behavior for not to exceed twelve months. This is taken from another old statute, viz., chapter 11, p. 9, of the Laws of 1833, and also plainly refers to conduct tending to a breach of the peace at common law or by statute. The provision stands entirely alone in the said act of 1833. Another section, viz., 1562 (Laws 1882, c. 410, p. 385), provides that in all cases of arrest for

"disorderly conduct," police justices may, in addition to holding the offender in sureties for good behavior, fine him not to exceed ten dollars, and in default of payment thereof to commit him to prison to serve one day for each dollar. This was first enacted in chapter 491, p. 1129, of the Laws of 1859, and stands alone there. Its plain purpose was to supplement the said provision of the act of 1833, by prescribing a fine or imprisonment in addition to holding the offender to keep the peace, in the discretion of the magistrate. The prescribing of a fine, or imprisonment, also shows the offense to be a misdemeanor.

The foregoing comprise, I believe, all of the provisions in the said old charter, and in the old statutes of which it is made up, which use the phrase "disorderly conduct"; except section 1448 of the said charter (Laws 1882, p. 364, c. 410), which is taken from the said act of 1833, and provides that any one who shall drive or ride a horse at a greater speed than five miles an hour, shall be deemed guilty of "disorderly conduct," and fined $10 or less, and committed one day for each dollar in default of payment. Here only, and in defining this one offense, the phrase is used pure and simple, without any addition or qualification. The other provisions only embrace or refer to disorderly conduct tending to a breach of the peace. Nevertheless persons have been in the past constantly convicted and imprisoned under the vague and naked charge of "disorderly conduct" for divers commissions or omissions which no law defines as crimes. The phrase has been made to mean anything a policeman or police justice saw fit. There can be no criminal acts which are not defined by law, and the Legislature cannot delegate to magistrates or courts the power of creating criminal offenses. The phrase "conduct (or disorderly conduct) tending to a breach of the peace" is restrictive. It embraces only offenses against the public peace, and its meaning has always been well defined and understood. The phrase "disorderly persons" occurs in sections of the said old charter and statutes, but it must not be confounded with the other phrase. It has a well-defined meaning therein, and has long had in our general statutes. Code Cr. Proc. § 899.

Nor does section 707 of the present charter (Laws 1901, p. 294, c. 466) help the magistrate out. It must be first observed that it does not profess to, and does not create or define any new offenses. It only professes to direct what shall be done with persons convicted of certain existing offenses which it names.

It provides that "whenever any person is convicted in the city of New York as constituted by this act, of public intoxication, disorderly conduct or vagrancy, the court or magistrate, before which or whom such conviction is had" shall impose certain penalties, if sentence be not suspended, viz.: "Upon a charge of vagrancy if the person so convicted be a prostitute between the ages of sixteen and twenty-one," the commitment shall be for not exceeding one year to certain reformatories which are named. And the provision then continues: "All other persons convicted upon a charge of vagrancy, including persons convicted as prostitutes and not committed to a reformatory, shall be committed * * * in the bor-

ough of Brooklyn to the penitentiary of said borough  *  *  *  for the term of six months." The words "including persons convicted as prostitutes and not committed to a reformatory," plainly refer to convictions of prostitutes as vagrants, as mentioned in the preceding part.

The relator was not accused, tried or convicted of being a vagrant (which term includes certain common prostitutes, as will be more fully shown immediately hereafter), and could not therefore be sentenced under this section as a vagrant. Section 1464 of the said old charter (Laws 1882, p. 367, c. 410) defines and classifies "common prostitutes who have no lawful employment whereby to maintain themselves" as vagrants; and section 887 of the Code of Criminal Procedure, which defines who are vagrants, also includes common prostitutes and contains the very same definition in respect of them, viz., "A common prostitute who has no lawful employment whereby to maintain herself" (subdivision 4); and the term "vagrancy" as used in the said section 707 has to be referred to these provisions for its meaning. It will be observed that all prostitutes are not vagrants, but only such as have no lawful employment to maintain themselves. No such charge was made against the relator, but the very different and restricted charge created by the said section 1458 of the old charter, viz., that she was in a public street "for the purpose of prostitution or solicitation," which is the offense created by that section, regardless of whether the person has any lawful employment to support herself, and can only be committed in the public street.

The three offenses mentioned by the said section 707 are, as we have seen, "public intoxication, disorderly conduct or vagrancy." Having shown that the relator was not charged with or committed for vagrancy (which includes certain common prostitutes, as we have seen), and there being no charge of intoxication, it only remains to consider the phrase "disorderly conduct" as used in the said section, and to see if it applies to the relator's case; for that section permits persons convicted of "disorderly conduct" to be imprisoned for six months in the penitentiary by the "court or magistrate."

In the first place, it is quite obvious that this crude section 707, and the cognate sections which immediately follow it, are the work of the " 'prentice hand"; and that "disorderly persons," a class defined by section 899 of the Code of Criminal Procedure, is meant by the use of the phrase "disorderly conduct." In the Code of Criminal Procedure vagrants are defined by section 887, as we have seen, and the sections which immediately follow prescribe the method of arresting and summarily dealing with them. Next comes section 899, which defines who are "disorderly persons," and the sections which immediately follow prescribe how they are to be arrested and summarily dealt with. The phrase "disorderly persons" is also correctly used in the said old charter, as we have seen. The intention of the draftsman of section 707 of the new charter was to prescribe the punishment for and place of imprisonment of these two classes of offenders, who are not tried as misdemeanants, as we have seen, but summarily dealt with, and who may therefore be disposed of by city magistrates, although they cannot try for misdemeanors. The

two classes of offenders are of the same general class, and section 707 which mentions vagrants means to couple with them "disorderly persons," the same as they are kept close together in the Code of Criminal Procedure, but uses loosely the phrase "disorderly conduct" instead. As the relator was not charged or tried as a "disorderly person," it follows that she cannot be committed as such.

But if the phrase "disorderly conduct" must be taken literally in section 707, then we have to go outside of such section for a definition of it, and to see what it means, for such section does not define or create new offenses, but only refers to existing offenses. If this be not so, and the said section had to be taken as creating a new misdemeanor of the loose name of "disorderly conduct," it would follow that a magistrate could not try on a charge of it, as he cannot try charges of any misdemeanors whatever, as we have seen. The provision in the said section that the "court or magistrate before which or whom such conviction is had," shall impose the penalties there prescribed, was not meant to confer on magistrates the power to try charges for misdemeanors, contrary to section 1409, but only means, of course, a court, where a court tries the charge, which would be the case in respect of all misdemeanors, and a magistrate, where a magistrate may try, which would be the case only in respect of those offenses which are not, as we have seen, misdemeanors, but lesser offenses to be dealt with summarily, viz., those embraced under the heads of vagrants and disorderly persons. If we go outside of the said section to get the meaning of the said phrase, then, as has already been shown, it applies only to misdemeanors, and a magistrate has no jurisdiction to try charges therefor.

Moreover, the relator was not charged with "disorderly conduct" under the said section 707, but of a precise offense under another statute, as we have already seen, and was therefore not convicted thereof. And (though it may be repetitious) no one could tell what offense the naked phrase "disorderly conduct" would create or mean, if it had to be taken as used in the said section as meant to create an offense. Surely, no one will say it could mean and include anything a magistrate or court might please. If so, it would be more uncertain than the chancellor's foot. Criminal offenses have to be defined by the Legislature, and that power cannot be delegated to the executive or judicial departments. What one magistrate might choose to call "disorderly conduct" might appear to another to be wholly innocent and permissible. No such standard of criminal offenses is allowable.

The relator is discharged.