## COURT OF SPECIAL SESSIONS—NEW YORK—
### APPELLATE TERM.

#### October 10, 1922.

## THE PEOPLE v. BERNARD ARKO, LOUIS KAKUK AND LOUISE ARDMA.

(1) DISORDERLY CONDUCT—STRIKE—PICKETING.

Strikers walking up and down in front of a restaurant without causing a crowd to congregate or without disturbing the peace are not guilty of disorderly conduct.

(2) SAME.

Mere picketing is not unlawful.

Before Justices FRESCHI, KERNOCHAN and EDWARDS.

*Otto M. Droege,* for appellants; *Danna Wallace, District Attorney (Joseph Leonardo, Assistant District Attorney,* of counsel) for respondent.

FRESCHI, J.:

Complaint was made by a policeman against the defendants for disorderly conduct tending to breach of the peace. They were convicted by a city magistrate and fined $25 each, which was paid under protest.

The specific charge contained in the affidavit of the complaining policeman reads as follows: "In front of 8613 Boulevard, R. B., and whereby a breach of the peace might be occasioned, the said defendants did then and there obstruct the sidewalk, refused to go away when ordered, and caused a crowd to collect, acts tending to create a breach of the peace."

According to the testimony of the patrolman Egan, defendants and another man "congregated" (although there is no positive statement of fact that they stopped) in front of No.

8613 Boulevard, Rockaway, at about 12:34 P.M., on May 28, 1922, and while picketing they obstructed the sidewalk in front of Weiner's Bakery and Lunchroom, where a strike of the employees had taken place. The policeman saw them there about five minutes, and he states that they walked " up and back together about once both ways. There were four men altogether there. One was an orderly fellow; he was orderly, doing everything that was right. Two of them had signs on, carrying them sandwich fashion;. the signs read (red letters) : ' Strike '; (black letters) ' Weiner's Bakery.' They were moving up and down the street in front of his store.'' In fact, on behalf of the defendants it is stated that they did not stop, except for a drink at a nearby soda stand. It is plain that they were always on the move. The officer further testified, in substance, that sometimes the defendants walked two abreast and sometimes three directly opposite the bakeshop in question, where the walk is narrowest, about four feet in width, so that the pedestrians using the highway at that point had to walk in the gutter in order to pass them. Although the officer saw the defendants only five minutes, most of which time the officers were engaged in conversation with them, one of the defendant's witnesses admits that defendants picketed about fifteen or twenty minutes. On cross-examination, this officer testifies as follows : " No crowd collected, except the people that were walking up and down; they couldn't pass; they had to walk into the gutter." It is reasonably certain that whatever crowd congregated at that spot was caused by the arrival and conduct of the police. Sergeant Murphy, on behalf of the People, testified : " I arrested them for obstructing the sidewalk—not for picketing."

The defendants claim that they were engaged in peaceable, quiet and orderly picketing, that they were not insolent and did not set themselves up in direct opposition to and disregard of lawful authority, nor engage in any disorderly practices, nor provoke or excite others to break the public peace.

The defendant Arko has testified that Sergeant Murphy

told him that if the signs were not removed the defendants would be taken to the station house and that only one .man should be left there to talk to the people. This defendant replied: " We are not allowed to talk to people." '

The theory of the prosecution is obvious from the statement of the district attorney at the trial. He said: " We can disregard the strike and everything else, but the fact that the sidewalk is only four feet wide and these men walked two by two, blocking the sidewalk, is disorderly conduct." The learned trial judge at page 5, stenographer's minutes, said: " I say they have the right to lawfully picket, but they cannot exaggerate it. They can do so in a lawful manner. They can induce anybody in that bakery in a lawful manner to leave."

. Section 1459 of the Consolidation Act is the only statute under which the conviction must be sustained, if at all; and the evidence thereunder· must establish to a moral certainty the commission of acts by the defendants which constitute such disorderly conduct as tends to a breach of the peace.

At the very outset I would say that, had the defendants congregated for an appreciable length of time in front of the bakery, where there was a strike of the employees, so as to interrupt peaceful travel and obstruct the free use of the sidewalk by the public and interfere with the free access of the employees and customers and the recognized and well-known property rights of the storekeeper in question regarding the highway in front of his premises, and engage in disorderly practices or incite to disobedience of the law, manifesting an intent to injure and annoy, and then refuse to disperse when ordered by the police, their conduct would be illegal (Truax et al. v. Corrigan et al., 42 Sup. Ct. Rep. 124; Mills v. U. S. Printing Co., 90 A. D. 605). But it is doubtful whether there is sufficient evidence here to sustain the magistrate's findings.

Pronouncements under this statute on this subject have been many and diverse. Such a case as this presents a problem of conduct, in the light of the various elements of the social life

in this cosmopolitan city, and calls for the formation of a judgment of measure and of values as to whether a thing done or word spoken is good or is evil in its tendency toward public behavior and order. In the final analysis cases of this order require a comparison of moral values. Only when there is a conflict with recognized standards and duty in the premises must we subordinate individual advantages and consider only the ultimate public welfare. A question is raised here as to the quantity and quality of the disturbances.

The defendants had a right to use the sidewalk, a public thoroughfare; they committed no wrong of a public character in carrying these particular signs on their shoulders, except possibly Sabbath breaking. The wording of the signs is not the gist of this offense. There is no claim that it is improper. Even picketing is not unlawful, provided that it does not transgress the rights of others or disturb the public peace (Segenfeld v. Kalin & Friedman, 117 Misc. 731).

There is a common right in all alike to the use of the public highways with as little hindrance and interference as is possible under the prevailing traffic conditions of these times. Manifestly, every use of a sidewalk, even a temporary one, is a partial obstruction with respect to others, which cannot be prevented. Of necessity this must be so. But how far this may be permitted to go is, in some instances and under certain circumstances, a moot question, and courts and judges are bound in observing the rights of the parties to act in the exercise of a sound discretion with great caution, lest they set up arbitrary standards and enunciate doctrines that will interfere with the ordinary limitations of personal liberty by creating new ones that may be oppressive and unjust. While freedom of locomotion is one of such liberties, yet pedestrians must observe the common amenities of the road and exercise their rights so as not to cause others to suffer unnecessary delay or inconvenience; and, where the conduct of parties in the use of the street may lead to clashes or conflicts tending to a breach of the peace,

then on sufficient evidence of that fact the trial judge may find the accused guilty. By experience we know how misunderstandings are likely to arise in so-called strike cases, and it is always wise for the police to resort to every reasonable and tactful expedient and method to enforce obedience to the law and the observance of rights of the public, including those of the strikers; and whenever it is shown that there has been an obstinate and wanton disregard of the public comfort and welfare, it may, with a show of reason, be held that such conduct is offensive to public good order.

Upon the whole case it seems quite doubtful as to what really happened that day on this occasion, with respect to the use of the sidewalk, and the resultant acts thereon. Inoffensive banner carrying and walking abreast on a sidewalk, unless coupled with aggravating circumstances, is not wrong. I am not unmindful, though, that what might be right under one set of conditions may be entirely wrong under different circumstances, and constitute disorderly conduct such as comes within the contemplation of the statute controlling such cases. The port of the banner carriers, the size of the banners, the inscription thereof, the hour, the place, the purpose, the temper of the people, the reaction—these and other matters are of vital importance in cases of this kind. At times even a mere refusal to comply with the directions of a policeman, who may act in an arbitrary and unjustifiable way, does not constitute " disorderly conduct." Mere disobedience of an officer is not always an offense punishable by law any more than his command is not always the law. There must be upon the whole case something more than a mere whimsical or capricious judgment on the part of the public authorities (People ex rel. Frank v. Keeper, 38 Misc. 233, aff'd 80 App. Div. 448, 176 N. Y. 46). The case must present proof of some definite and unmistakable misbehavior which might stir, if allowed· to go unchecked, the public to anger or invite dispute, or bring about a condition of unrest and create a disturbance. (People .v. Fogel, 167 App.

Div. 550, 553). We know that some people apprehend trouble quicker than others; but in this class of cases we are bound to consider every element of a peaceful and peaceable community. If we are to be governed exclusively by the arbitrary will of the authorities, expressing their own apprehensions in the premises and establishing their own standards of right and wrong, then I fear that the sword of justice may be made to work havoc in a community of freemen that are law-abiding. Magistrates are vested with certain discretionary power in civil government to administer the laws with the high purpose of ascertaining on proof adduced whether such laws have been violated and preventing further violation if possible by a proper measure of punishment or by the liberation of those who have been falsely accused. In a word, this municipal law (Consolidation Act) was enacted to afford a means of checking lawlessness and to provide means for and contribute to the general security of the people and public good order. It has served an excellent purpose for the common good; but it must not be used so as to deny, in effect, private rights of the people in their relation to and when they are involved in matters of public concern.

While it is true that the acts complained of herein need not have the dangerous tendency of nor rise to the level of a crime, nevertheless the offense must have a tendency to excite people to quarrel in public places or disturb the peace. Has sufficient cause within this rule been proven, in the ordinary relation of things, to warrant an arrest in this case? Did the circumstances here tend to excite passion? Was there a temptation to resentment? Were the acts excesses? What is reasonable police interference in order to effect public safety and happiness, and what must be guarded against? Sometimes it is difficult to draw the line of division between acts that are wrong and those which are right under such a law as this.

If rights of others were clearly treated with contempt by the defendants, and this resulted in a breach of the peace, then

we would have something which approaches an offense for which a summary conviction may be had.  What were the probabilities to grow out of the conduct of the defendants?  Might they work only a private wrong as distinguished from a public wrong?  If so, then the criminal courts should not take cognizance of it. I do not consider any acts of disorder were shown beyond a reasonable doubt that violated public tranquillity or that created a danger of trouble occurring and conflict ensuing, or tending to offend the sense of decorum and dignity, decency or public good of the neighborhood.  These and other phases of the subject are important.  They are incidents which may constitute as well as aggravate the wrong.  Every phase of human character should be taken into account in judging these cases, and besides we must elevate the benefits or measure the harm or danger of the acts complained of in the light of our experience, knowing and understanding the consequences of such acts and then determine the issue as to whether the spirit or letter of the law has been violated.  I am not satisfied that the acts here tended to provoke hostilities or that the inference is that disorders were threatened and impending, or that there was a contempt of lawful authority or gross insolence (see People v. Grange, 116 Misc. 523).

The judgment of conviction should be reversed, the complaint dismissed and an order made to refund the fines of these defendants.

KERNOCHAN, C. J., concurs; EDWARDS, J., dissents.

KERNOCHAN, C. J.:

This is a conviction upon the charge of disorderly conduct whereby a breach of the peace might be occasioned.  It is therefore a violation of section 1459 of the Consolidation Act.  The conduct complained of as defined in the complaint is that the defendant had (1) obstructed the sidewalk, (2) refused to go away when ordered and (3) caused a crowd to collect.

From the evidence it is clear that on Sunday, May 28, 1922,

at 12:30 in the afternoon some of the employees of Wiener's bakery, situated 8613 Boulevard, Rockaway Beach, Queens county, were on strike and that two striking employees were in the immediate vicinity of the bakery. That these two employees were walking up and down in front of the bakery carrying signs which announced that there was a strike by the employees against the bakery. The men carrying the signs walked two abreast and the sidewalk in front of the bakery was but four feet wide. At this time there were quite a number of people passing up and down on the sidewalk. The defendants Kakuk and Wardman were carrying the signs, the defendant Arko, not an employee of the bakery, seems to have directed the activities of the sign bearers, as did also Max Kannitser, a witness for the defendants and a delegate of the union.

The disorderly conduct charged consists of three separate acts: (1) Obstructing the sidewalk, (2) refusing to move when ordered and (3) causing a crowd to collect. I will consider the evidence bearing on these three distinct charges inversely to their enumeration in the complaint.

1st. There is no evidence that any crowd collected until after the officers appeared and entered into conversation with the defendants as to their actions. In fact, one of the officers said: " There was no crowd collected except the people walking up and down."

2nd. As to refusing to go away when ordered, there is no evidence that they were ordered to go away. One of the officers testified that he said to the defendant Arko: " I don't mind your picketing, but one man is sufficient to leave here," and when Arko said: " If there is anything we are doing here that isn't right, you can take us to court." The officer says that he then arrested them.

3d. The evidence that the defendants were obstructing the sidewalk is in the inference to be drawn that two or three men walking abreast on a four-foot wide sidewalk would obstruct it, but there is no evidence to show that they were walking abreast

when others were passing up and down, except that one of the officers says: " They had these banners on their shoulders and walking two abreast and sometimes three and anybody that wanted to pass them had to go into the gutter—there wasn't room enough." Even this statement does not clearly show whether the officer saw people go into the gutter or assumed they would have to if the strikers continued to walk two or three abreast.

On the testimony of the officers, who were the only witnesses for the People, I do not feel that there was such an obstruction of the sidewalk as would tend to a breach of the peace. There is no evidence against the defendant Arko, in the testimony given by the officers, although he himself assumes some responsibility for the conditions complained of.

I feel that the judgment of conviction should be reversed on the law of facts.

EDWARDS, J.:

On a Sunday afternoon, while a strike was in progress, the appellants, or two of them, aided by counsel of the third, making a demonstration or " picketing " on behalf of the strikers, continued, for five minutes, as observed by witnesses for the prosecution, for fifteen minutes, as shown by evidence of the defense, to walk to and fro on the sidewalk adjacent to the premises of the former employers, who were the proprietors of an establishment known as " Wiener's Bakery," displaying signs bearing the words, " Strike, Wiener's Bakery." The bearers of the signs walked two abreast, so that on the narrow sidewalk immediately in front of the bakery there was not room for persons meeting them to pass without going into the gutter.

I think the foregoing are undisputed facts as shown in the record before us. My use of the plural in referring to the ownership of the bakery may be inaccurate.

The appellants were tried in a City Magistrate's Court on a charge of disorderly conduct tending to a breach of the peace,

including an allegation of obstruction of the sidewalk of a street, and were convicted and fined $25 each. This appeal is from that judgment.

Disorderly conduct is not a nebulous fancy, but a legal reality, and disorderly conduct which tends to a breach of the peace, while not of the body of the sphere of crime, is a near satellite, and when committed in this city is mildly punishable as a public offense under the unrepealed sections of the Consolidation Act on the subject (People v. Mansi, 129 App. Div. 386; People ex rel. Burke v. Fox, 205 N. Y. 490).

There is no more danger of a defendant's being subject to the " whim or caprice " of the individual in the seat of judgment in cases of this kind than in any instance of the ordinary functioning of judicial construction in passing from the general rule to the particular application. Here, even if definition were not aided by authoritative precedents, the content of the words of the statute is sufficiently significant. *Disorderly* means *not orderly,* and orderly conduct in the view of a system of jurisprudence means conduct according to law; therefore, any transgression of public or private rights is disorderly conduct, and if such conduct tends to result in conflict of physical force, substituting human violence for the " rule of reason," applying the law to the needs of the occasion, it is within the condemnation of the statute (see Address of Lord Shaw of Dunfermline, the Widening Range of Law, American Bar Association Journal, September, 1922).

It has been said that in New York picketing is lawful, but the opinions of our courts on the subject are carefully guarded. Certainly strikers have no privilege in picketing to disturb public order or to invade private rights. In my opinion the appellants in this case did both. They made a hostile demonstration consisting of what amounted for the time being to exclusive appropriation of the sidewalk of a public street immediately in front of the premises of those against whom this proceeding was conducted in prosecution of a contest, with the

merits of which we are in nowise concerned. The highway is primarily and principally for the purpose of passage. I do not think the appellants were using the part of the highway mentioned for that purpose, although they continued walking to and fro. It seems clear that in so doing they invaded the private rights of the abutting owners and unlawfully interfered with the proper use of part of the street by the public and that their acts tended to a breach of the peace.

Strong pronouncement upon the subject of this branch of the matter here considered is found in two recent decisions of the Supreme Court of the United States (Am. Steel Fdrs. v. Tri-City Central Trades Council, 42 Sup. Ct. 72, Advance Sheets, January 1, 1922; Truax v. Corrigan, 42 Sup. Ct. 124, Advance Sheets, January 15, 1922).

Whether wrong or danger was large or small in this case, I believe that the great principle set forth and expounded in the two cases last cited is here involved.

I think that the conviction of these appellants was right, and advise that the judgment appealed from be affirmed.