## Court of Appeals.

October, 1905.

## THE PEOPLE v. JAMES N. ABEEL.*

(182 N. Y. 415.)

FORGERY—MISREPRESENTATION OF SENTIMENTS, ETC., OF ANOTHER IN WRITING CONSTITUTES—PENAL CODE, SEC. 514, SUBD. 3.

> Under subdivision 3 of section 514 of the Penal Code the crime of forgery in the third degree is committed whenever a person willfully, that is, knowingly misrepresents the sentiments, opinions, conduct or character of another by means of a false, forged or counterfeit writing; the mere misrepresentation is the gist of the offense, and the fact that the person whose name is used is not injuriously affected thereby is immaterial.

> People v. Abeel, 100 App. Div. 516, affirmed; for denial of motion in arrest of judgment see 45 Misc. 86, *supra* p. . . . .

APPEAL from a judgment, entered January 10, 1905, upon an order of the Appellate Division of the Supreme Court in the first judicial department affirming a judgment of the Court of General Sessions of the Peace in the county of New York, rendered upon a verdict convicting the defendant of the crime of forgery in the third degree.

The facts, so far as material, are stated in the opinion.

Jesse Stearns and Martin S. Lynch, for appellant.

This indictment is founded on subdivision 3 of section 514 of the Penal Code. An examination thereof will show that the person whose sentiments, conduct, opinions, etc., are misrepresented, or otherwise injuriously affected, must be the same person whose name is forged. (Ranney v. People, 22 N. Y. 413; People v. Phyle, 136 N. Y. 554.) The writing in question in this case is not the subject of forgery. (Pierson v. People, 79 N. Y. 433; People v. Comrs. of Taxes, 95 N. Y. 559; Mayor, etc., v. M. R. Co., 143 N. Y. 1.) The indict-

---

* For annotated report of this opinion with case note appended see 1 L. R. A. N. S. 730.

ment is void because the letter alleged to have been uttered is neither defamatory upon its face, nor is it an instrument of legal validity by which the rights of Mr. Van Every, or any other person, were or could be prejudiced. (People v. Shall, 9 Cow. 778; Cunningham v. People, 4 Hun, 455; Mann v. People, 15 Hun, 155; People v. Savage, 5 N. Y. Cr. Rep. 341; People v. Drayton, 168 N. Y. 10; Waterman v. People, 67 Ill. 91; Foulkes v. Comm., 2 Rob. [Va.] 836.)

William Travers Jerome, District Attorney (Robert C. Taylor of counsel), for respondent.

The utterance of the forged letter was a clear violation of the Penal Code, and was committed under circumstances which justified the jury in finding felonious intent. (People v. Hughes, 137 N. Y. 29; McCourt v. People, 64 N. Y. 583; People v. Flack, 125 N. Y. 324; People v. Wiman, 148 N. Y. 29.) The provisions of section 514, subdivision 3, of the Penal Code, under which Abeel was convicted, are in line with all modern criminal legislation. It is clear that no person could utter a forged instrument, misrepresenting the sentiments and opinions of another, for any honorable purpose. Such an instrument could only be used as a means to obtain something by false pretenses. The Legislature was clearly justified in prohibiting the forging and utterance of such an instrument, whether the defendant had any specific intent to defraud anybody or not. (Matter of Neagle, 135 U. S. 1; Barker v. People, 3 Cow. 704; People ex rel. Kemmler v. Durston, 7 N. Y. Crim. Rep. 350; 55 Hun, 64; 119 N. Y. 569; Matter of Bayard, 25 Hun, 546.

WERNER, J.: In the month of October, 1903, a young woman named Eleanor Anderson was employed as a telegraph operator by the Western Union Telegraph Company at one of

its branch offices in the Grand Hotel in the city of New York. The defendant saw her there, was attracted by her and sought an introduction. For the purpose of creating a favorable impression he falsely represented himself to be J. Ogden Goelet, the son of a wealthy resident of New York, and his first step in that direction was to send a telegram to James N. Abeel (himself) signed J. Ogden Goelet, making an appointment at the University Club and asking for an answer at the Grand Hotel. This telegram was delivered to Miss Anderson and transmitted by her. This was followed on the same day by a note from the defendant asking Miss Anderson for the honor of an introduction and apologizing for the method employed to obtain it. Without waiting for a written reply to his note the defendant went to the Grand Hotel and verbally repeated to Miss Anderson his desire to become acquainted with her. In this conversation the defendant suggested that he would try to find some one to give him a letter of introduction. Several days later the defendant again called on Miss Anderson, stating that he had been so fortunate as to attend a dinner at which he had met Mr. Van Every, one of the vice-presidents of the telegraph company, from whom he had obtained a letter of introduction, which was somewhat general and informal because the defendant had desired not to compromise or embarrass Miss Anderson. The defendant then presented the letter, which reads as follows:

"NEW YORK, *October* 31, 1903.

"*To any Employee*
        "*Western Union Telegraph Company:*
"This will introduce Mr. J. O. Goelet, a personal friend of the management of this Company. Any favors shown him will be duly appreciated by the corporation and myself.
                "Yours truly,
                        "J. B. VAN EVERY,
                                "*2nd Vice-President.*"

The presentation of this letter was followed by a series of visits and attentions on the part of the defendant, in the course of which he artfully strengthened the deception that he was a member of the prominent Goelet family, with the result that he proposed marriage to Miss Anderson on the Monday following their first meeting, was accepted on Tuesday, and the wedding day set for the ensuing Thursday. Meanwhile arrangements were made for the consummation of the marriage; the defendant gave Miss Anderson a check for $100,000, drawn on the Astor National Bank, signed " George B. De Witt, Co-trustee," and indorsed " J. Ogden Goelet." On the wedding day the defendant appeared at the home of Miss Anderson, gave her a marriage ring and then, upon the pretext of going down stairs to attend an interview with newspaper reporters, he surreptitiously departed from the house never to return. This is a bare outline of the events that led to the arrest, indictment and conviction of the defendant upon the charge of forgery in the third degree.

The statute under which the defendant was indicted and convicted is subdivision 3 of section 514 of the Penal Code which, so far as pertinent to the case at bar, provides that " a person who . . . shall alter, or who shall cause, aid, abet, or otherwise connive at, or be a party to the uttering of any letter, telegram, report or other written communication, paper or instrument purporting to have been written or signed by another person, . . . which said letter, telegram, report or other written communication, paper or instrument . . . as aforesaid, the person uttering the same shall know to be false, forged or counterfeited, and by the uttering of which the sentiments, opinions, conduct, character, prospects, interests or rights of such other person shall be misrepresented or otherwise injuriously affected . . . is guilty of forgery in the third degree."

The case rests entirely upon the facts established by the prosecution, as the defendant introduced no evidence. Thus the broad question presented by this appeal is whether these uncontroverted facts constitute the crime of forgery as defined in the statute above quoted. The most obvious feature of this statute is that it adds to the list of forgeries several that were not known to the common law or to our statutes as they existed prior to 1884. And since it is beyond dispute that the act charged against the defendant is not one that would have constituted the crime of forgery under the common law or the earlier statutes, it is evident that it will not be profitable to discuss the cases decided under the law as it then stood. The power of the legislature to designate as statutory offenses acts that were lawful and innocent at common law is not challenged by the defense and, indeed, is too well established to permit of doubt or discussion at this late day. We proceed, therefore, directly to the discussion of the statute and its bearing upon the act charged against the defendant. And here we are confronted with the difficulty that always exists when the technicalities of legal reasoning are brought to bear upon simple English. The able and ingenious arguments of counsel admirably illustrate the possibilities in this direction, but when we get away from the briefs and look at the letter of the statute, it seems so plainly designed to cover just such a case as the one before us, that it is like carrying coals to Newcastle to demonstrate it. The act committed by the defendant, and charged in the indictment, was the uttering of a letter containing the false representation that the defendant was Mr. J. O. Goelet, a friend of the management of the Western Union Telegraph Company, and bespeaking for him the favors of its employees. This letter purported to have been signed by J. B. Van Every, one of the vice-presidents of that company. It was used to deceive a young woman, one of the employees of the company, into believing that the defendant was a young man whose financial

and social position made him a most desirable acquaintance and the result of that belief was that he was permitted to become a most welcome suitor. The record does not clearly disclose by what Providential interference this insidious and dastardly attempt upon the honor and happiness of a young woman was intercepted just at the point of culmination, nor is it necessary that we should know, because the criminality of the defendant's act in uttering the letter in question depends wholly upon other considerations. That the letter was a falsehood from beginning to end, and that the use of Van Every's name thereon was unauthorized, is beyond dispute. That it thoroughly misrepresented any opinion or sentiment harbored by Van Every, or conduct indulged in by him towards the defendant is clear, for it imputed to the supposed writer an acquaintance with the defendant as Mr. J. O. Goelet and a desire to introduce him in that capacity to the employees of the telegraph company, when in fact Van Every did not know him at all.

The statute declares a person guilty of forgery who knowingly utters a false or counterfeited letter, etc., by which the sentiments, opinions, conduct, character, prospects, interests or rights of the person whose utterance the writing purports to be are misrepresented or otherwise injuriously affected. The coincidence between the act of the defendant and the declaration of the statute seems to be so complete that there would scarce be room for construction if it were not for the technical suggestion that the word " misrepresented " is coupled with and qualified by the succeeding words " or otherwise injuriously affected."

In our language there are frequently two or more possible constructions of sentences when their meaning may depend upon punctuation or upon the juxtaposition of certain words with others. The sentence under consideration is capable of a construction that will limit the forgeries punishable under sub-

division 3 of section 514 of the Penal Code to cases where the misrepresentation is literally injurious in its effect upon the person whose name is used. But that, we think, would be a strained and unnatural construction. The context of the subdivision in which it is placed seems to indicate that it was the purpose of the legislature to cover cases in which the mere misrepresentation is the gist of the offense, as well as other cases in which the act injuriously affects the person whose name is improperly used. When the sentence is thus construed the word "otherwise" has a proper and natural meaning in connection with what precedes and follows it. It is perceivable that sentiments, opinions, conduct and character may be misrepresented, but just how they may be injuriously affected is not so apparent. Prospects, interests or rights, however, may be of such a material character as to be injuriously affected by misrepresentation of sentiments, opinions, conduct and character. Thus, we think, the phrase "or otherwise injuriously affected" may properly be referred to prospects, interests and rights, as distinguished from sentiments, opinions, etc., and in that view of the statute the crime of forgery in the third degree is committed whenever a person willfully, that is, knowingly, misrepresents the sentiments, opinions, conduct or character of another by means of a false, forged or counterfeit writing, just as it may be committed in other cases through the injurious effect of such writing upon the prospects, interests or rights of the person misrepresented.

In construing this statute several things are to be remembered. We are living in an age when the wisdom of legislatures and the learning of courts are put to the severest tests by the cunning and skill of the unscrupulous adventurer and the professional criminal. Statutes are rarely the precursors of crime. They usually follow in their wake. Our centers of population are infested with persons whose highest aim in life seems to be the circumvention of the criminal law by the in-

vention of new crimes. The grosser crimes, such as murder, arson and larceny are easily defined and classified. The same is true of the more common forms of forgery and of many purely statutory crimes. Experience has shown, however, that no generic definition of forgery can be comprehensive enough to include all the crimes that may be committed by the simple use of pen and ink. And that is why the legislature has found it necessary to frame statutes so broad as to include in the category of forgeries many acts which are criminal in their tendency and effect but do not fall within the earlier definitions of that crime. One needs only to glance over the chapter on forgeries in the Penal Code to appreciate how manifold are the methods by which the crime of forgery may be committed. In one class of cases the intent to defraud is of the essence of the crime. In another class the commission of the act presupposes criminal intent. In still another class the mere commission of the act constitutes the crime without reference to criminal intent. The section under discussion (514) is fairly illustrative of this condition. Its first subdivision deals with the corrupt falsification, alteration, erasure, obliteration and destruction of corporate, copartnership and individual books of account. Subdivision 2 relates to the forging, alteration or counterfeiting of letters, telegrams, etc., with intent to injure or defraud when the act injures any other person in his good name, standing, position or general reputation. The third subdivision is the one relied upon by the prosecution, and the fourth deals with the forgery of tickets of admission and the like, in which the element of fraud is also an essential ingredient. As is clearly shown in the very lucid and exhaustive opinion of the learned recorder,* written upon the motion in arrest of judgment, that portion of the Penal Code which includes section 514 deals with acts which an enlightened public policy finds it necessary to place in the category of crimes, but which,

---

* *Supra,* p. 514.

on account of the difficulty inherent in the subject, it is impossible to classify or define with precise accuracy, for they spring from a great variety of motives and purposes and are multiform in their effect upon those against whom or in whose name they are committed. The legislature, in the exercise of its undoubted power, has chosen to classify as a forgery the act charged against the defendant. It is true that this act would not have been a forgery as that term was understood under the common law. It may be equally true that the same act might be punished with even greater effectiveness under a different name, but it is not the province of courts to legislate or to nullify statutes by overstrict construction. That is particularly true when the legislature has ordained a rule of construction. Section 11 of the Penal Code provides that " the rule that a penal statute is to be strictly construed does not apply to this Code or any of the provisions thereof, but all such provisions must be construed according to the fair import of their terms, to promote justice and effect the objects of the law." Tested by that simple rule, we think the indictment herein charges a crime which was established by ample evidence.

Some of the exceptions taken at the trial are covered by the general discussion upon the merits, and as to the others it is enough to say that we think no error was committed that requires a reversal of the judgment.

The judgment of the Appellate Division should, therefore, be affirmed.

CULLEN, Ch. J. (dissenting) : I dissent from the affirmance of the conviction of the appellant in the courts below because, first, in my judgment, the statute under which he has been indicted does not include the offense proved against him and, second, under any construction of the statute the greater part of the evidence against the appellant was incompetent and immaterial; in other words, he has been indicted for one offense,

and tried, convicted and punished for a totally different offense.

The section of the Penal Code (sec. 514, subdiv. 3) was enacted in 1884 as a new and original provision of the criminal law. It has no predecessor in either the statute or the common law, and I know of no similar legislation, but the meaning of the very words of the statute seems to me reasonably plain. The vital point of difference between the majority of the court and myself is the question whether to constitute the offense the misrepresentation of the sentiments, opinions or conduct of the person whose name is unauthorizedly used, must be injurious to such person, or whether mere misrepresentation whether injurious or harmless falls within the statute. I agree with the prevailing opinion that intent is not a necessary ingredient of the offense, except the intent to commit the prohibited act. I also agree with the proposition that the statute is not in any respect limited to obligations for the payment of money or affecting rights of property, which alone would be the subject of forgery at common law. In fact, I doubt whether the statute was primarily directed against offenses of that character. But I insist that the misrepresentation which this statute constitutes a felony must be injurious to the person whose name is forged. To this the majority of my brethren say " no." In the learned prevailing opinion it is said, referring to the statute: " The sentence under consideration is capable of construction that will limit the forgeries punishable under subdivision 3 of section 514 of the Penal Code to cases where the misrepresentation is literally injurious in effect upon the person whose name is used. But that we think would be a strained and unnatural construction. The context of the subdivision in which it is placed seems to indicate that it was the purpose of the legislature to cover cases in which the mere misrepresentation is the gist of the offense." The best test I know of to determine whether a particular construction is natural and reasonable is to consider the results that follow from the particu-

lar construction. If those results are unreasonable it is strong proof that the construction which leads to them is unnatural and unreasonable.

The doctrine about to be declared is that the fabrication of a letter misrepresenting the sentiments of another, regardless of the intent (which I concede) and regardless of the character or effect of the misrepresentation (which I deny), constitutes the perpetrator of the act a felon and a forger. I am entirely willing to admit that probably in all cases the fabrication of a letter is reprehensible, but one must be dead to all sense of proportion who does not appreciate that there are infinite differences in the moral culpability of such acts, from the comparatively harmless, though intensely silly, fabrication of an invitation to dinner, as a practical joke, to the utterance of a declaration which, if credited, might destroy a man's reputation or be injurious to his property and pecuniary interest. Assuming in the case of a practical joker (always detestable) that the offender should be punished, should he be declared a felon? Our provisions for criminal punishment are far different from the old English Penal Code, which inflicted the same penalty on practically all offenses from the theft of a handkerchief in a shop to the most atrocious of murders, to wit, death. If the character or effect of the misrepresentation is no element of the offense, then it is just as felonious to impute, by a fabricated letter, to the keeper of a brothel a belief in the moral obligation of chastity as to impute to an eminent divine or statesman the most degrading and infamous sentiments.

The effect of this doctrine, which I combat, goes much further. The statute is general. It includes all misrepresentations of a person's sentiments, opinions or conduct. It no way limits the subjects as to which the sentiments or opinions relate, but on the contrary includes the infinite number of subjects on which it is possible for human beings to have sentiments or opinions, religion, politics, law, ethics, esthetics and so on in-

definitely. If it be true that mere misrepresentation is sufficient to constitute the crime and that injury, at least to some one, is not a necessary element of it, then it is a felony to misrepresent by a fabricated letter the sentiments or opinions of another upon the most academic question; on the identity of the Man in the Iron Mask, on the authorship of the Junius Letters, on the relative merits of Austin and of the "Sweet Singer of Michigan," on the relative prowess of the two combatants at the last national prize fight and on the superiority of the various entries for the next great horse race. In the case before us the only charge in the indictment is that the defendant uttered a false letter purporting to bear Mr. Van Every's signature, stating, "Any favors shown him (the defendant) will be duly appreciated by the corporation and myself," thus representing that the writer desired the extension of favors to the defendant, when, in fact, he did not. Not a word is to be found in the indictment relating to the conduct of the defendant towards Miss Anderson (the real offense for which he was tried and convicted); indeed, her name is not mentioned in it, nor is there any charge in the indictment that the letter tended to injure, or was used to injure, Mr. Van Every or any other person.

The learned district attorney in his brief suggests that the object of the statute was to prevent fraud or imposition on third parties by the production of forged letters. In reply to this it may be stated that such frauds upon third parties are very thoroughly covered by other provisions of the Penal Code, which punish obtaining money or property under false pretenses and procuring employment under forged letters of recommendation. But the conclusive evidence that the statute had no such object is that only misrepresentations of the sentiments, opinions or conduct of the purported writer fall within the statute, which in no way includes false statements of facts, except facts constituting part of the conduct of the writer, nor

misrepresentation of the sentiments or opinions of others than such writer. Such statements, to say the least, would be as apt to injure third-parties as any statement of opinion. Thus the uttering of a fabricated letter asserting that A was the president of some great financial institution and the owner of some specific piece of property of great value, would constitute no offense unless the utterer obtained, or sought to obtain, money or property on the strength of such letter, in which case, under another statute, the gist of the offense would be the obtaining of the money or property, or the attempt so to do, not the utterance of the letter; while if the letter were cast in the following form, " I regard A as a very rich man," the offense would be complete at the time of its utterance, even though the sole object of A was to pose as a man of great wealth and excite the admiration of the vulgar. If a boy over twelve (under twelve he would be presumed incapable of crime), desirous of attending a ball game, should present to his teacher a fabricated excuse purporting to be signed by his mother, " Please excuse Johnny from school to-morrow, as I wish to have his services at home," he would certainly fall within the provision of this statute as it is about to be construed, for the excuse would misrepresent the sentiments and opinions of his mother. That the boy should be soundly flogged I am entirely willing to concede, but I deny that he would be a felon or that the legislature intended to declare him such. But a more incongruous result from the doctrine asserted remains. If the boy, having taken legal advice, should present as his excuse, " Johnny's aunt died yesterday, the funeral has been fixed for to-morrow," while in truth he had no aunt, or if one she was still living, these being merely statements of fact, Johnny, though a very bad boy, would not break any penal law of the state, but he would, or certainly should, be subjected to the flogging to which I have alluded. Equally true would this be of an excuse purporting to be signed by the mother which stated,

"Johnny's father wishes you to excuse him from attendance at school to-morrow," because, under the statute, to constitute the offense the misrepresentation must be of the sentiments of the ostensible writer, not those of other persons.

The learned district attorney has appreciated the remarkable results that would follow from the doctrine that under this statute neither the subject-matter nor the effect of the misrepresentations is an element of the offense and says that in the cases suggested no jury would convict. I think that ordinarily this would be so, but I had supposed that our Penal Code was not such as to require jurors to violate their oaths to avoid the perpetration of a great wrong, not like the old English criminal law, where a jury at times found five guineas to be less in value than five shillings to avoid the infliction of death for a petty crime.

The learned district attorney seems somewhat perplexed in ascertaining what was the real evil which this statute was intended to prevent or punish, at one time suggesting, as already stated, that it was to prevent fraud on third parties, at another, to punish libels that imputed to the ostensible writer of the letter degrading or infamous sentiments. The inquiry is important for it is settled law that in the construction of a statute there must be considered the mischief intended to be remedied and the object to be attained by its enactment. (Pierson v. People, 79 N. Y. 433.) So also, "The circumstances existing at the time of the passage of the act which led to its passage, may be regarded for the purpose of furnishing something in the nature of a guide to its proper construction and interpretation." (O'Brien v. Mayor, etc., of N. Y., 139 N. Y. 548. p. 588.) In the case before us, though the statute has no predecessor, there is no mystery as to the mischief it was intended to prevent nor as to the occurrence which led to its enactment. In the presidential campaign of 1880 there was attributed to one of the candidates a letter asserted to be a forgery, which imputed to him the utterance of sentiments in

no respect morally or intellectually discreditable, but which were deemed to be most injurious to his prospects of election. It was believed by a large number of our citizens that through this letter the candidate lost the votes of the Pacific States. The utterance of this letter, if forged, was a grievous offense both against the individual and the public and justly the subject of severe punishment. In 1884, to prevent a repetition of the offense at the presidential election then approaching, this statute was passed. It enacts that the utterance of a fabricated letter shall be a felony when by such letter the sentiments, opinions or conduct of the suppositious author is misrepresented or otherwise injuriously affected. The use of the word "otherwise" in connection with "injuriously affected" clearly imports that the misrepresentation must be injurious or the word "otherwise" has no meaning or application whatever. It is true the statute is carelessly drawn. Nevertheless, its meaning is, to me, perfectly clear. The misrepresentation must be injurious to the supposed writer. The statute was also properly drawn so as not to limit the subject-matter on which the sentiments of the writer might be misrepresented. For a subject concerning which the misrepresentation of his opinions or sentiments might be of absolutely no importance to one man might be of vital consequence to another. Surely he must be an extreme partisan who would assert that the declaration of a belief in the doctrine of free trade or in that of protection reflects any discredit upon the person professing such belief. To the writer of this opinion it would be of no moment that his views on the tariff were misrepresented, but it would probably be fatal to the success of a candidate for Congress in the Pittsburgh district to attribute to him the advocacy of free trade. The statute, of course, is not confined to misrepresentation of political opinions. There are many subjects as to which the misrepresentation of one's opinions might cause him great injury. To misrepresent one's sentiments towards his employers or towards those from whom he was seeking employ-

ment might lead to his discharge or prevent employment. To the great mass of people a misrepresentation of their sympathies in the present war between Russia and Japan would be of no possible consequence, but in the case of a party dealing with either belligerent such misrepresentation would be disastrous. It seems to me unreasonable that a man should be declared a felon for attributing to another a letter in which was expressed the opinion that Julia was more beautiful in person and more attractive in character than Alice, when the supposed writer had no acquaintance with either, and the only relation existing between them was the admiration of an occupant of a stall in a theater for the artist on the stage. But if the circumstances were different and the writer were engaged to Alice and the forged letter were used to break the engagement, then the perpetrator of the act would be properly convicted under the statute before us and justly punished. If we construe the statute as, in my opinion, it is written, that is to say, that the misrepresentation to constitute a crime must be injurious to the supposed author, we eliminate all of what seem to me the extravagant and unreasonable results of a contrary doctrine. We are brought down to a simple and clear test of criminality. Was the misrepresentation injurious or did it tend to injure the apparent writer? If it was, or did, the crime was committed no matter to what subject the sentiments misrepresented related, whether politics, religion or love. If the fabricated letter had no such tendency or effect then it was not within the statute.

I may here add another consideration which I think should attract the attention of any one seeking to elucidate the statute. By it not only is the utterance of a forged letter made a crime, but the utterance of anything that purports to be a copy of such letter when no letter exists. No similar provision is found elsewhere in the law, either common or statute. This clearly shows that, as I have stated, it was the so-called Morey letter that led to the enactment of the law. In that case the publica-

tion of what was asserted to be a copy of a letter written by the candidate was just as injurious to the candidate as the production of the forged letter itself. In fact, not one in a thousand and probably not a single one of those whose votes are supposed to have been influenced by it ever saw or could have seen the original letter.

But even if the doctrine of the prevailing opinion be adopted there was a fatal error in the admission of evidence on the trial. The so-called letter of introduction, which is the subject of the indictment, was presented to Miss Anderson and from that time forward no further allusion was made to it. Then the offense was complete. Despite this the prosecution was allowed to prove under objection and exception that after the introduction to Miss Anderson the defendant paid her the attentions of a suitor and finally, after the lapse of some time, became engaged to be married to her. On the day fixed for the marriage, either through baseness or through fear of exposure, the defendant absconded. The prosecution was allowed to prove that during the period of his attentions to Miss Anderson the defendant gave to her a check for a hundred thousand dollars purporting to be signed by the executor of a deceased Mr. Goelet. That the conduct of the defendant toward this young lady was base and despicable to the last degree is certain, but under the doctrine of the prevailing opinion, that the effect of the misrepresentation is no ingredient of the offense, what possible materiality had his subsequent conduct on the trial of this indictment? The defendant under the guise of a member of a family of wealth and social position sought by imposture to obtain the hand of the lady. But under the law about to be declared he would have been equally criminal had the deception been of an opposite character and he had really been Prince Charming masquerading as a peasant. This defendant has been indicted simply for uttering the false letter of Mr. Van Every. He has been tried, convicted and punished for an imposture practiced on Miss Anderson to which no reference

of any character is to be found in the indictment. Such a practice is to be depricated, especially so when, as in this case, it is by no means clear that the real offense of the defendant cannot be punished under other statutes.

The judgment appealed from should be reversed and the defendant discharged unless a new indictment is presented against him at the next term of the court in which he was convicted.

GRAY, BARTLETT and HAIGHT, JJ., concur with WERNER, J.; O'BRIEN and VANN, JJ., concur with CULLEN, Ch. J.

Judgment of conviction affirmed.