(91 Misc. Rep. 347)

PEOPLE v. MOLLING.

(Court of General Sessions, New York County.　July 30, 1915.)

1. PROSTITUTION ⬤◯1—ELEMENTS OF OFFENSE—STATUTE.

Under New York City Consolidation Act (Laws 1882, c. 410) § 1458, subd. 2, declaring that every common prostitute, loitering in any thoroughfare for the purpose of prostitution, shall be guilty of disorderly conduct, the state must establish, first, that defendant was a common prostitute and, second, that she was loitering in a thoroughfare for the purpose of prostitution or solicitation; and the fact that defendant had been in the neighborhood before, and loitering there, does not, of itself, establish that she is a common prostitute.

[Ed. Note.—For other cases, see Prostitution, Cent. Dig. §§ 1, 2; Dec. Dig. ⬤◯1.]

2. CRIMINAL LAW ⬤◯448—EVIDENCE—CONCLUSIONS AND OPINIONS—DISORDERLY CONDUCT.

On the trial of an information under New York City Consolidation Act, § 1458, subd. 2, for disorderly conduct, charging that defendant was a common prostitute and was loitering in a public place for the purpose of prostitution, testimony of a police officer, who had observed defendant loitering, that he knew her to be a prostitute and that he had seen her in the neighborhood before, loitering there, was inadmissible, as being the officer's conclusion on the precise issue in the case, since that should have been established by proof of the particular facts showing that the defendant was a common prostitute.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1035–1039, 1041–1043, 1045, 1048–1051; Dec. Dig. ⬤◯448.]

Lizzie Molling was convicted of disorderly conduct for being a common prostitute, and she appeals.　Reversed.

Abraham Harawitz, of New York City, for appellant.

Charles Albert Perkins, Dist. Atty., of New York City, for the People.

WADHAMS, J.　The information charges that the defendant is a common prostitute and night-walker, and that she was on the 7th day of April, 1915, in the city and county of New York, loitering on Lexington avenue and Twenty-Fifth street, that being a public place, for the purpose of prostitution, to the annoyance of passers-by.

The defendant was charged with a particular form of disorderly conduct, which is defined by section 1458, subdivision 2, of the New York City Consolidation Act, as follows:

"Sec. 1458.　Every person in said city and county shall be deemed guilty of disorderly conduct that tends to a breach of the peace, who shall in any thoroughfare or public place in said city and county commit any of the following offenses, that is to say: * * * 2. Every common prostitute or night-walker loitering or being in any thoroughfare or public place for the purpose of prostitution or solicitation, to the annoyance of the inhabitants or passers-by."

[1] The elements which the people must establish are: First, that the defendant was a common prostitute or night-walker; and, second,

that she was loitering or in a thoroughfare or public place for the purpose of prostitution or solicitation.

The only witness for the people, a police officer, testified that on the afternoon in question he observed the defendant walking east on Twenty-Sixth street; that when she reached Third avenue .he saw her speak to a man, and after a short conversation she walked south until she came to Twenty-Third street, when he saw her speaking to another man; after a short conversation with him, she walked west to Lexington avenue, and then north on Lexington avenue to Twenty-Fifth street, then east on Twenty-Fifth street to the middle of the block between Lexington and Third avenues, when she spoke to another man and after a short conversation was about to enter a hotel on the corner of Twenty-Fifth street and Lexington avenue, when the witness overtook the defendant and asked the man if he knew her and was told that he did not. No conversations were overheard between the defendant and the men to whom she had spoken.

In People v. Kitty Smith, 141 App. Div. 931, 126 N. Y. Supp. 1142, and in People v. Lillian Sinclair, 133 App. Div. 944, 118 N. Y. Supp. 1135, judgments upon similar evidence of loitering, there being no testimony of what had been said, were affirmed by the Appellate Division without opinion, and such evidence has since been deemed sufficient to establish loitering in a public place for the purpose of prostitution or solicitation. A similar result was recently reached in England. In Horton v. Mead, 23 Cox's Criminal Law Cases, pt. 4, p. 279, the King's Bench Division dismissed the appeal from a judgment of conviction for soliciting in violation of the Vagrancy Act of 1898, where there was evidence of conduct, but no evidence of conversation, holding that it was not necessary that the solicitation prohibited by the statute should reach the mind of the person solicited.

The people, however, must also establish, in order to support a conviction, that such loitering was committed by a common prostitute or night-walker. The only evidence on this point in the record before me is the testimony of the police officer, with reference to the defendant:

"I know her to be a prostitute, and I have seen her in the neighborhood before, loitering there."

It is obvious that although the defendant had been in the neighborhood before, and loitering there, such fact does not, of itself, establish that she is a common prostitute.

[2] But it is contended that the statement of the police officer that he knows her to be a prostitute is sufficient proof of the fact. The statement by the police officer was clearly his conclusion or opinion, and the question presented is whether such opinion was admissible. Although many statements will be found in the authorities to the effect that the witness must testify to facts, and not give conclusions or opinions, both conclusions and opinions are undoubtedly received in many cases, and are not merely confined to the testimony given by experts. Evidence is daily received, and characterized as fact, which, upon careful analysis, is found in truth to be opinion, and sometimes it is impossible to distinguish with certainty between what is opinion and

what is fact. Often the witness will testify to an ultimate fact, which is the result of observation of certain phenomena from which he draws his inferences which lead to his conclusions. Nor is the objection that the opinion or conclusion of the witness usurps the function of the jury, or is upon the very issue in question, a conclusive ground for exclusion, for, as has been pointed out, the opinion of the witness cannot oust the jury, which alone can render the verdict, and an opinion upon the very issue, if the opinion is to be received at all, is of particular value as a guide to the jury in reaching its verdict. Wigmore on Evidence, §§ 1919–1921.

The legal principle upon which conclusions and opinions are admitted is that either because of the special skill or expert knowledge of the witness, or because of the nature of the subject-matter under observation, or for other reasons, the testimony will aid the jury or the court in reaching a judgment, and the principle upon which conclusions and opinions are excluded is that where the jury or the court can be furnished with the facts or the data upon which the opinion is based, and, having such facts, is as able as the witness to draw a conclusion or form an opinion therefrom, then such testimony will not aid the jury or the court in reaching a judgment, and is rejected as unnecessary and superfluous. Wigmore on Evidence, vol. 3, § 1918.

In the discussion of this subject, witnesses are usually divided into those who have special skill, or experts, and those who have no special qualifications, or lay witnesses. Opinions by experts are more commonly received than opinions by lay witnesses, not because in principle there is any difference between the two classes of witnesses, but because persons having peculiar knowledge or experience not common to the world, and who give testimony founded upon such knowledge or experience, may more generally be of aid to the court and the jury in determining the questions at issue. Greenleaf, in his treatise on Evidence (volume 1, § 441b), in discussing the general principle of the opinion rule, said:

"There is, therefore, no rule admitting opinions or inferences when made by one class of persons, experts, and excluding them when made by another class, laymen; but there is a rule excluding them whenever they are superfluous, and admitting them whenever they are not."

The Court of Appeals, in Van Wycklen v. City of Brooklyn, 118 N. Y. 424, at page 429, 24 N. E. 179, at page 180, said:

"While it is no longer a valid objection to the expression of an opinion by a witness that it is upon the precise question which the jury are to determine (Transportation Line v. Hope, 95 U. S. 297 [24 L. Ed. 477]; Bellinger v. N. Y. C. R. R. Co., 23 N. Y. 42; Cornish v. F. B. F. Ins. Co., 74 N. Y. 296), evidence of that character is only allowed when, from the nature of the case, the facts cannot be stated or described to the jury in such a manner as to enable them to form an accurate judgment thereon, and no better evidence than such opinions is attainable."

When the conclusion or opinion of a lay witness is upon the precise issue in the case, and it is obvious that if the facts were before the court it could with equal ability as the witness reach the conclusion, it emphasizes the wisdom of the exclusion of the evidence, not only because, under the governing principle, it is superfluous, but because

it is not the best available evidence, as, in the absence of the underlying facts, the court is required to substitute confidence in the witness for certainty as to facts in the rendition of exact judgment. In such cases the courts have frequently characterized the evidence as *mere conclusions.* Ivory v. Town of Deerpark, 116 N. Y. 477, 485, 22 N. E. 1080; People v. Pullman, 166 App. Div. 99–102, 151 N. Y. Supp. 741. The same rule has been applied where the issue was whether or not a person was of a particular class, as whether "solvent" (Denman v. Campbell, 7 Hun, 88; Lawson on Expert and Opinion Evidence, rule 65), or a qualified "voter" (People v. La Coste, 37 N. Y. 192); or a "common gambler" (Leatherman v. State, 49 Tex. Cr. R. 485, 95 S. W. 504).

The case last cited bears close resemblance to the case before me. The appellant had been convicted of vagrancy, on the ground that he was a professional gambler. The court reversed the judgment, on the ground that the witnesses for the people, who testified that defendant was a professional gambler, should have been required to state facts, so that the jury could draw a conclusion as to whether or not the appellant was a professional gambler, and that the court erred in permitting the witnesses to give their opinions. In the Matter of Travis, 55 How. Prac. 347, at page 350, in construing the statute (2 R. S. [6th Ed.] p. 893, § 2) requiring the magistrate to file a record of conviction which must state the "circumstances of the offense," the court said:

"It is no compliance with such statute for the magistrate to use the language of the act, and say that Emma Travis is a disorderly person, 'for that she was and is a common prostitute,' for that is a simple conclusion by him, depending upon 'the circumstances,' which are not detailed."

In the case before me no facts or circumstances were put in evidence showing that the defendant was a common prostitute. The subject was one concerning which facts could readily be placed before the court, and, had the court been possessed of the facts upon which the opinion of the officer must necessarily have been based, it could as well have reached a conclusion, unaided by the opinion of the witness. The conclusion or opinion of the witness was therefore inadmissible. To establish guilt the people must prove the particular facts showing that the defendant was a common prostitute.

Judgment reversed.