## CITY MAGISTRATE'S COURT — NEW YORK — BOROUGH OF MANHATTAN.

### December, 1916.

## THE PEOPLE ex rel. JOHN J. MILLER v. MAZIE BROCKMAN and EDNA JORDAN.

COMMON PROSTITUTE *—LOITERING—CONSOLIDATION ACT, § 1458.

If a woman is clearly shown by her conduct on the occasion complained of to be loitering in a thoroughfare for the purpose of prostitution or solicitation to the annoyance of the inhabitants or passersby, it is not necessary to produce other evidence to show that she is a common prostitute. The keynote of the Consolidation Act, § 1458, is the annoyance of the inhabitants or passersby " by women loitering for the purpose of prostitution."

W. BRUCE COBB, City Magistrate:

The defendants were tried before me on December 11, 1916, charged with loitering for the purpose of prostitution in violation of section 1458 of chapter 410 of the Laws of 1882, known as the " Consolidation Act." The case now comes before me for final disposition.

The evidence of the complaining witness, a police officer, showed that the defendants, both young women, were first observed by him in One Hundred and Twenty-fifth street, a public thoroughfare in the borough of Manhattan, city and county of New York, on December 8, 1916, shortly before midnight, walking together in an easterly direction near Seventh avenue. They shortly left the center of the sidewalk and proceeded to the building line where two men were looking into a show-window. The men turned around as the defendants came up and after a short conversation with the defendants the

---

* See Notes, Vols. 22, p. 508; 32, p. 361.

men walked east, the defendants following a short distance behind them to Seventh avenue, when the defendants stopped and stood on the corner, the men continuing. The defendants then retraced their steps and at the center of the block between Seventh and Eighth avenue approached and appeared to speak to two other men who were standing in front of a store. These men after a short interval left the defendants and crossed the street, when the defendants again walked west until they neared Eighth avenue, when they went over to a man standing in front of a cafe. There the witness heard the defendant Brockman say, "Well, would you spend $5?" Both defendants then walked away about five feet and the defendant Jordan said: "How about three?" whereupon the man walked away.

The defendants then walked to the corner of Eighth avenue and crossed to still another man who was standing on the sidewalk, and after what appeared to be a short conversation walked with him south on Eighth avenue and turned east into One Hundred and Twenty-fourth street. The witness at this point was joined by another officer, who also testified herein as to what thereafter occurred. Both officers then stopped the defendants and their companion. After certain questions by the officers and replies by the man, afterwards excluded by the court, the defendants were placed under arrest.

The defendants testified on their own behalf, contradicting the officers. They made no incriminating admissions, though their stories and demeanor were unconvincing.

The statute under which the defendants are charged appears to have been enacted first as section 20 of chapter 508 of the Laws of 1860 ("An Act in relation to police courts in the City of New York") and to have been continued in its present form into the so-called "Consolidation Act" (chapter 410, Laws of 1882) which preceded the present Greater New York Charter, the enactment of which the provision under consideration survived. (People ex rel. Frank v. Davis, 176 N. Y. 465, affirm-

ing 80 App. Div. 448; People ex rel. Smith v. Van de Carr, 86 App. Div. 9; People ex rel. Reynolds v. Warden, 44 Misc. 149.) Such provision reads as follows:

"Section 1458. Every person in said city and county shall be deemed guilty of disorderly conduct that tends to a breach of the peace, who shall in any thoroughfare or public place in said city and county commit any of the following offenses, that is to say: *  *  *

2. Every common prostitute or nightwalker loitering or being in any thoroughfare or public place for the purpose of prostitution or solicitation, to the annoyance of the inhabitants or passersby."

Counsel for the defendants in effect contend (a) that the evidence fails to show the guilt of defendants beyond a reasonable doubt, and (b) that there is no evidence that either defendant is a common prostitute.

As to the first contention I am satisfied from the entire evidence that the defendants were loitering in a public thoroughfare for the purpose of prostitution and that it is fairly inferable that they were actually soliciting there to the annoyance of passersby.

The highly significant statements as to money made by the defendants to the man in front of the cafe, in combination with all the other facts and circumstances, especially in view of defendants' failure to convincingly explain them away, leaves no room for any reasonable possibility of innocence. Moreover, the court has seen the witnesses and heard them testify.

In People v. Ruetiman (85 Misc. 233, 235) ROSALSKY, J., says: "One of the grounds urged by the defendant for a reversal of the judgment of conviction is that the magistrate was not warranted on the conflict of testimony in believing the police officer, the only witness called by the People. The question as to which witness was to be believed was preeminently one for the magistrate, who saw the witnesses and observed their de-

meanor and manner of testifying" (citing appropriate authorities).

It is true that much of the testimony is indirect or circumstantial. However, this must needs be in a large proportion of offenses involving prostitution. Thus in State v. Dickerhoff (127 Iowa [1905], 404, 407), where the defendant was charged with enticing a female to enter a house of prostitution, the court said: "Deceit and secrecy surround the conduct of the actors * * * and the State is compelled to rely very largely upon the proof of circumstances from which the conclusion of guilt may properly be drawn. When the combination of circumstances thus shown is such as to establish the inference of guilt beyond a reasonable doubt, a conviction based thereon should not be interfered with because the evidence is circumstantial rather than direct."

We now come to counsel's second contention, viz, that there is no evidence that either defendant is a common prostitute.

It seems to me that this resolves itself into the following proposition: If a woman is clearly shown by her conduct on the occasion complained of to be loitering in a thoroughfare for the purpose of prostitution or solicitation, to the annoyance of the inhabitants or passersby, is it necessary to produce other evidence to show that she is a common prostitute, or may that fact be inferred from what she is then and there engaged in?

It is entirely understandable that any evidence tending to show defendant to be an habitual prostitute is relevant as strenghthening the case against her on the question of her probable *intent* in stopping and speaking to various men, and such evidence as previous conduct or prior conviction of the same offense is doubtless admissible.

To this extent the character of the defendant may be considered in issue, though the cases concern themselves rather with the admissibility of such evidence than its necessity. (State v. Burns, 145 Iowa, 588, 590; State v. Rice, 56 id. 431; Pea-

body v. State, 72 Mississippi, 104; Williams v. State, 98 Ala. 52; but see Arnold v. State, 28 Tex. Ct. App. 480.)

Prostitution has been defined as "The act or practice of prostituting or *offering* the body to an *indiscriminate* intercourse with men; the *common* lewdness of a woman." This is the definition given by Webster's Dictionary, and was early adopted in this State. (Carpenter v. People, 8 Barb. 603, 610; People v. Parshall, 6 Park. Crim. Cases, 129, 133.)

Almost without exception the various authorities turn to the lexicographers for definition, and it is significant that neither do the various lexicographers, the text books, the law dictionaries nor adjudged cases suggest, except in rare instances as Springer v. State (16 Texas Criminal Appeals, 591, 593) any distinction between "prostitute" and "common prostitute." (U. S. v. Bitty, 208 U. S. 393; Commonwealth v. Lavery, 247 Penn. State [1915], 139; State v. Gardner [Iowa Supreme Ct., March, 1916], 156 N. W. 774, 748 *et seq.;* State v. Thibodeaux, 136 La. St. [1915], 935; State v. Cavaluzzi, 113 Me. 41, 43; Cyc., vol. 32, p. 730; Bouvier's Law Dict., Rawle's Rev., 3d ed.; "Words and Phrases Judicially Defined.") Authorities might be multiplied almost indefinitely. (See State v. Gardner, *supra,* for exhaustve discussion and numerous citations, many in turn citing and relying upon People v. Carpenter, *supra.*)

In this State we are reminded that prostitution is not a mere meretricious relation with a single individual, but *common, indiscriminate* meretricious commerce with men." (People ex rel. Howey v. Warden, 207 N. Y. 354, 363; see also People v. Draper, 169 App. Div. 479, 487.)

An examination of practically all the State statutes which refer to prostitutes reveals that the terms "prostitute" and "common prostitute" are used indiscriminately, with apparently no thought of distinction and, as above stated, no such distinction is reflected by the decided cases.

Hence it may fairly be said that the expression " prostitute " of itself imparts the idea of being *common* or *indiscriminate.*

In considering the exact wording of the statute the words of WERNER, J., in People v. Abeel (182 N. Y. 415, 419), seem peculiarly fitting: " We proceed, therefore, directly to the discussion of the statute and its bearing upon the act charged against the defendant. And here we are confronted with the difficulty that always exists when the technicalities of legal reasoning are brought to bear upon simple English. The able and ingenious arguments of counsel admirably illustrate the possibilities in this direction, but when we get away from the briefs and look at the letter of the statute, it seems so plainly designed to cover just such a case as the one before us, that it is like carrying coals to Newcastle to demonstrate it."

In the case of People v. Molling (91 Misc. 347, General Sessions), the learned judge stated relative to this identical statute: " The elements which the People must establish are, first, that the defendant was a common prostitute or nightwalker and, second, that she was loitering or in a thoroughfare or public place for the purpose of prostitution."

The court then holds that the testimony of the police officer that he knew the defendant to be a prostitute and had seen her in the neighborhood before loitering there were conclusions and therefore inadmissible.

The court after discussing the law relative to opinion evidence and conclusions of witnesses states:

" In the case before me *no facts* or *circumstances* were put in evidence showing that the defendant is a common prostitute. The subject was one concerning which facts could readily be placed before the court, and had the court been possessed of the facts upon which the opinion of the officer must necessarily have been based it could as well have reached a conclusion unaided by the opinion of the witness. The conclusion or opinion was therefore inadmissible. To establish guilt the People must

prove the *particular facts* showing that the defendant was a common prostitute." (Italics inserted.)

It is to be noted that neither in the actual holding nor in the language used does the Molling case go to the extent that the fact that a woman is a common prostitute can never be inferred from the transaction itself, however extreme, but must be proved by a separate line of evidence.

Even if this were so, I should, with the greatest respect, feel constrained to follow decisions of the Appellate Division which appear to be inconsistent with such a doctrine.

Thus it was in effect held in People v. Mitchell (App. Div. 1st Dept., Dec. 2, 1910, without opinion, 141 App. Div. 928; see case on appeal) that the indiscriminate character of the woman may be established by a single act of direct solicitation, the idea of accosting a stranger with the motive of hire being sufficient.

In the recent case of People v. Solomon & Cahn (App. Div., 2d Dept., October 6, 1916, 174 App. Div. 144), the court says: "It is urged that the statute is directed against professional gamblers, and that the defendants operated for a time too limited to be such. That would mean that a person could with impunity have his day of doing what would be a crime if done for some time longer. Penal statutes do not regard such actors as mere private amateur gamblers because they operated only on occasions. *It is not the duration of the occupation that gives it criminal quality under the statute, but what the contrivance is and its relation to the public.*"

Does not the court there say as to whether or not a man or woman is a common gambler or a common offender of any kind is to be drawn from all the facts and circumstances, and that circumstantial evidence may be as strong as direct?

Wigmore on Evidence (Vol. III, sec. 1620, 3) says: "The offense of being a common thief, or a common gambler, or other *common offender,* or of keeping a common nuisance is one by

which some courts, sometimes under statute, has been regarded as provable by reputation; but perhaps the notion here enters that reputation is a part of the issue." (Compare People v. Pasquale, 206 N. Y. 598, 600.) Ferguson v. Superior Court (26 Cal. App. Cases, 554, 558), is the only case the writer has been able to find which seems to hold squarely that a prostitute is so far a common offender that she can only by a series of repeated acts be shown to be habitual in her conduct.

It is quite possible, of course, to so frame a statute or ordinace so as to make character a separate and distinct issue, as " every female person *known* as a ' street walker' or common prostitute " (Nevada Rev. Laws 1912, sec. 728 *et seq.*) or " all women of disreputable *character.*" (Braddy v. City of Milledgeville, 74 Ga. 516, construing a city ordinance.)

The cases of People v. Sinclair (133 A. D. 944), People v. Smith (141 A. D. 931), People v. Berg (153 A. D. 944), all affirmances by the Appellate Division without opinion (see cases on appeal), depended upon by counsel, contained elements of proof as to character of the defendants (albeit in the form of conclusions and opinions much in the same form as in the Molling case), but in none of these cases did the Appellate Division indicate that a separate line of proof as to defendant's character was necessary, all being simple affirmances with no opinions either on appeal or below.

It is further submitted that should evidence of prior convictions or past prostitution be necessary in a case of *indirect* evidence to show defendant a common prostitute, a street walker not recognized as possessing a previous court record or having previously solicited in the presence of an available witness could pursue her calling with impunity until she directly solicited an officer or a citizen willing to make a complaint. Clearly any *quantum* of evidence, whether it lacks proof of previous conviction or previous reputation or solicitation or not, if it

be sufficient in quantity and quality to convincingly show defendant to be indiscriminate, should establish the offense.

The effect of such a doctrine as contended for, in a vast metropolitan community where both police officers and prostitutes are numerous and citizens invariably unwilling to make complaint on account of the consequent notoriety would be deplorable.  It is impossible for the police officers to know all the prostitutes, much less to identify them with previous transactions, and manifestly since finger prints can be taken only after conviction that form of identification is unavailable.

The use of the term " nightwalker " in the statute under consideration throws but little if any light on the intention of its framers.  It is used disjunctively and is, moreover, an elastic expression, comprising generally those walking abroad by night for some unlawful purpose who may or may not be women. (8 Cyc. 390; 29 id. 1047; Bouvier's Law Dict., Rawle's Rev., 3d ed.)  They " are persons who make themselves common nuisances by going about at night committing bawdy or other petty offenses or annoyances."  (Am. & Eng. Ency. of Law, 2d ed., vol. 21, p. 540, 703, citing State v. Dowers, 45 N. H. 543.)

The dominant idea of the statute here seems to me to be that expressed by GAYNOR, J., in People ex rel. Forester v. Warden (39 Misc. 700, 701), who, in construing the very words here in issue, said: " It is to be observed that the offense defined in subdivision 2 is not of being a common prostitute; it is of loitering or being in a public street or place for the purpose of solicitation or prostitution which is called disorderly conduct that tends to a breach of the peace; and this was the only charge that was or could be made against the relator under the said subdivision.  She could not be charged or convicted under it merely of being a common prostitute; the offense there defined is not that, *but an offense against decency which could be committed only in the public street.*"

It is beyond dispute that in construing any statute, penal or otherwise, " the cardinal rule is that the words used in it, if of common use, are to be given their natural, plain, obvious and ordinary signification. (Commonwealth v. Lavery, *supra*, citing Cyc., vol. 36, p. 1183; see also Wharton's Criminal Law, vol. 1, p. 52.)

" Though penal laws are to be construed strictly, they are not to be construed so strictly as to defeat the obvious intention of the Legislature. The maxim is not to be so applied as to narrow the words of the statute to the exclusion of cases which those words, in their ordinary acceptation or in that sense in which the Legislature has obviously used them, would comprehend. The intention of the Legislature is to be gathered from the words they employ  *  *  *  The case must be a strong one, indeed, which would justify a court in departing from the plain meaning of words, especially in a penal act, in search of an intention which the words themselves do not suggest." (U. S. v. Wiltberger, MARSHALL, Ch. J., 5 Wheaton, 76, 95, 96; see also Bitty v. U. S. 208 U. S. 393, 401, 403.)

Viewed in the light of these broad canons of construction, I think the keynote of the law in question is the *annoyance* of the inhabitants or passersby " by women loitering for the purpose of prostitution."

It is truly an offense against public decency, and it makes little difference to the respectable citizen when so annoyed whether or not the woman's character and previous acts can be ascertained and brought forward in the form of exact legal proof to bolster up the prosecution's case.

The defendants are found guilty as charged and remanded for sentence.

No appeal was taken and the time to appeal has expired.