Liston F. Coon,
Acting County Judge. The defendant herein has been indicted by the Grand Jury charged with committing third degree forgery in two counts, one count of unlawfully causing political literature to be reproduced and one count of failing to file an expenditure statement pursuant to the Election Law.
He now demurs to each count of the indictment alleging that it fails to comply with statutory requirements as to form and that the indictment fails to state a crime as to each count. A discretionary bill of particulars was granted and served prior to the argument of this demurrer.
The alleged state of facts upon which this indictment is grounded, and as developed upon argument, is essentially as follows: In advance of the 1965 general election there existed in the City of Ithaca a highly spirited and zealously fought three-way contest for the office of Mayor. In addition to the candidates of the two traditional parties, a former Mayor was again seeking the position as an independent candidate. Of perhaps greater ferment and excitability was added the issue of a Avater fluoridation referendum.
*998 Into this flushed atmosphere was introduced a postcard poll by the Ithaca, Journal-News, the local daily newspaper. Residents selected at random were invited to indicate upon a return postcard a preference for the office of Mayor, as well as certain other municipal posts, and whether for or against fluoridation. Nothing more appeared on the' card but a letter accompanied the card indicating that the newspaper was attempting to predict the outcome of the election.
Upon the incoming of the poll cards it was discovered that more cards were being returned from certain areas than had been sent out, that certain cards were reproductions and that as to the latter, all were .similarly marked. An investigation followed and defendant was ultimately accused by the subject indictment.
A demurrer is a creature of statute controlled by section 321 et seq. of the Code of Criminal Procedure. It is a trial upon issues of law. (People v. Bissert, 71 App. Div. 118.)
Section 323 of the code specifies five grounds for relief, of which the above-stated contentions of the defendant are two.
The first contention is that the several counts do not sufficiently set forth the essentials necessary to spell out the crime charged. Although indictments were at one time tested upon certain rigid concepts of construction, the more modern view is that the court should take a liberal approach and look to the realities of what the indictment alleges. (People v. Williams, 243 N. Y. 162.) Nevertheless while every element of the crime charged need not be set forth, every essential element is a necessity. (People v. Berkowitz, 14 Misc 2d 384, 391.) In other words, the court must look to the gravamen of the crime charged in order that a defendant be not convicted of a crime and under circumstances not charged in the indictment., (People v. Gold, 239 App. Div. 368.)
Defendant’s second contention is that assuming the facts of the indictment be true, as the court must in deciding a demurrer, the acts of the defendant constitute no crime under the law. This assertion is one of prime importance for should the defendant prevail here, all other claimed errors are rendered academic.
The real issue here is whether or not defendant’s alleged acts come within the purview of the evils which the statutes condemn. Was the legislative purpose behind these penal sections to deter and/or to punish what defendant is accused of doing f
As stated by Chancellor Keht: the legislative intent with which statutes are enacted “is to be collected from the context, *999 from the occasion and necessity of the law, from the mischief felt, and the objects and the remedy in view”. (1 Kent’s Comm. [14th ed.], p. 462). “ Statutes, directed against known and stated evils, are not to be stretched to cover situations having no real or reasonable relation to those evils ”. (Metropolitan Life Ins. Co. v. Durkin, 301 N. Y. 376, 381.)
THE FORGERY COUNTS.
The first two counts of the indictment accuse the defendant, pursuant to section 889 (subd. 2, 3) of the Penal Law, of forgery in the third degree, alleging in substance that he caused to be forged and counterfeited copies of the postcard used in the Ithaca Journal-Neios poll and he then caused the same to be used in this forged condition; and that the effect of these actions was to injure the “ good name, standing, position or general reputation ” of the Ithaca Journal-News and also that the “ sentiments, opinions, prospects, interests and rights of other persons, were misrepresented and otherwise injured, damaged and affected ’ ’.
This aspect of third degree forgery was added to the laws of this State by chapter 378 of the Laws of 1884 and historically came about, we are told, as a result of alleged improprieties connected with the presidential election of 1880, in which James A. Garfield narrowly defeated Civil War hero, General Winfield Scott Hancock, by a popular plurality of less than 10,000 votes. There was attributed to one of the candidates a letter, asserted to be a forgery, which imputed to him the utterance of sentiments which were deemed to be injurious to his prospects of election, as a result of which he lost the votes of the Pacific States.
In order to avoid a possible repetition of the situation in the 1884 presidential election the statute was enacted. It included the use of any paper purporting to be a copy of an original.
Claims of election irregularities are not new. Seldom does an important election take place that complaints do not arise that bogus campaign literature, anonymous tracts and pamphlets and scurrilous statements have worked to the detriment of one or more candidates.
In the case of the subject forgery statute, it seems clear that the aim of the lawmakers was to proscribe the use of written instruments purportedly authored by some individual and setting forth that person’s stated sentiments which in fact were not only either false or nonexistent but of maledictory content as well,
*1000 There is an analogy here with the criminal libel statute. Section 1340 of the Penal Law makes criminal a writing or printing which exposes a person to “ hatred, contempt or obloquy
Do the facts of this case viewed in the light of these standards create criminal liability in this case? The answer, to this court, is in the negative.
We have no writing signed by anyone. It expresses sentiments or opinions of no one. In its original printed state, it is merely a postcard upon which appear the names of various candidates and the referendum proposition. The fact that the cards were thereafter marked and returned with an expression of choice cannot be construed to be other than an expression of the sentiments of the unidentified marker. Had the marked cards carried the purported name or signature of some responsible person the matter could be viewed in a different light.
Such was the situation in People v. Thompson (170 Misc. 288), the only reported case relating the provisions of third degree forgery to an election case. There the defendant was accused of distributing copies of an actual sample ballot, prepared by and carrying the name of the Town Clerk which he had so marked as to convey the impression that the Clerk was in favor of permitting the sale of alcoholic beverages, a local option issue on the ballot.
The County Court disallowed a demurrer, saying (p. 290) .* “ The gist of the accusation made in the indictment here is that defendant caused, abetted or otherwise connived at and was a party to the uttering of such .sample ballot purporting to have been written or signed by Zola E. Mitchell and which paper or instrument defendant knew to be false and misrepresented her sentiments and opinions or otherwise injuriously affected her character, prospects, interests or rights
The dissimilarity between that case and the one at bar is striking. There the reproduced document actually carried the name of another person and was so “ doctored ” as to purportedly express that person’s sentiments. It was then circulated without his knowledge. Here the purpose of the postcard was to solicit an expression of opinion from others without identifying the respondent. The Ithaca Journal-News was merely seeking a straw vote consensus. Obviously the newspaper was capable of expressing its own views and sentiments with or without the poll.
The leading NewYork case in this area of third degree forgery is People v. Abeel (182 N. Y. 415). In that case the Court of Appeals upheld the conviction of a defendant who, hoping to *1001 curry the favors and attention of a young lady, obtained a spurious letter of introduction assertedly signed by a vice-president of the company for which the girl worked.
After stating the primary question on appeal to be whether or not the facts made out a definition of forgery under the statute, the court decided in a four-to-three decision that they did, pointing out (p. 419) that “ the letter was a falsehood from beginning to end, and that the use of Van Every’s name thereon was unauthorized ’ ’.
The Abeel case is therefore distinguishable from the one here where one finds no attempt, through use of another’s name, to misrepresent that person or gain privilege or favor for the user.
Any attempt to bring the facts of this case within the confines of the forgery statute here concerned would be placing a strained construction upon the statute, which the courts have consistently condemned. (People v. Feliciano, 10 Misc 2d 836, 839). There must be a clear and positive expression of legislative intent to make criminal acts, otherwise lawful. (People v. Shakun, 251 N. Y. 107.)
The subject indictment fails to state a crime of third degree forgery.
Defendant’s contentions relative to the form of the indictment are thereby rendered moot.
THE REPRODUCING COUNT.
The third count of the indictment accuses the defendant of violating section 781-b of the Penal Law by “Unlawfully printing or reproducing political literature.”
The gist of this count is that defendant is accused of causing to bo printed the straw poll postcards above discussed without having affixed thereto his name and the name of the printer as required by the statute.
Again, as in the forgery counts, the real tost to be here determined is that given the facts as they are alleged, does it constitute a crime under the law? Does the reproduced postcard constitute political literature?
This statute which became law originally in 1941 is part of article 74 of the Penal Law entitled “Elective franchise”. There can be no question but what it is aimed at election evils.
From a study of the history of the section and the various amendments, it is clear that the statute seeks to curtail the printing and dissemination of scurrilous campaign literature of an anonymous nature, attacking some party or candidate. Likewise, a requirement that the source of such literature appear *1002 on the printed product would permit candidates to better refute or rebut charges and to assist the electorate in evaluating campaign material.
The latest amendment to section 781-b by chapter 576 of the Laws of 1962 resulted from a recommendation of the Attorney-G-eneral following an investigation into claimed irregularities connected with the 1961 primary election in New York City. The report to the Legislature referred specifically to ‘ ‘ hate literature ’ ’ and the anonymous printing of false and misleading campaign material of a derogatory nature.
The thrust of the statute is to counter the anonymity without which the author of such literature would not dare to publish or the printer dare set to type. It presupposes the brand of literature which on its face would be recognized as poison penmanship.
Here the defendant is accused of criminality in having had reproduced by a printer postcards which on one side show the name of a daily newspaper and on the other side the names of several opposing candidates and the referendum issue of fluoridation. It derogates against no one, makes no accusations, champions no cause and on its face is as innocuous as a card listing competing entrants in a beauty contest or athletes vying for the most valuable player award.
Moreover, the defendant is not accused of causing the reproduction of this alleged political literature in its original state but of the reproduction of the cards as previously printed by another. Yet nowhere does the name of the earlier printer or orderer appear. If the reproduction of these cards constitutes political literature here, it was political literature as to the original author and printer.
While entertaining the concern the Legislature must have had in the enactment of, and the subsequent amendments to, section 781-b the court fails to find any intent to prohibit the type of printing here involved where the printed matter is neither false, inflammatory nor malicious. In fact the printed material is so free of any policital bias or partisanship that it cannot even be called “ political literature ”.
As to this count the court also finds that it fails to state a crime, obviating any treatment of the issue of the indictment form.
THE ELECTION LAW COUNT.
The final count of the indictment accuses the defendant of failing to comply with subdivision 2 of section 322 of the Election Law requiring the filing of an affidavit, by a person pro *1003 moting the success or defeat of a candidate or political party, showing any expenditures of money.
On the grounds stated that the acts alleged involve the printing of materials to be used in a straw poll and as such do not constitute political literature, this count likewise fails to state a crime and is demurrable.
On all counts of this indictment, the demurrer is sustained and judgment therefor is herewith given to be entered upon the minutes.